OPINION
{¶ 1} Jeffrey Combs ("Combs") was convicted after a bench trial in the Dayton Municipal Court of one count of domestic violence, in violation of R.C. 2919.25(A)(1), a misdemeanor of the first degree. He received a sentence of six months of incarceration and a fine of $1,000.00, plus court costs. The court suspended the jail term and $750.00 of the fine, on the condition that he complete supervised probation.
 {¶ 2} Combs presents one assignment of error on appeal.
 {¶ 3} "The trial court committed prejudicial error by entering guilty verdict on charge of domestic violence under2919.25(A)(1) against the manifest weight of the evidence."
 {¶ 4} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 5} R.C. 2919.25(A) provides that "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "Family or household member" includes a spouse. R.C. 2919.25(E)(1)(a)(i).
 {¶ 6} The state's case consisted of the testimony of Combs' wife, Marjorie Combs ("Marjorie") and, on rebuttal, the testimony of Gina Stough, the Dayton Municipal Court Advocate Coordinator for the Artemis Center for Alternatives to Domestic Violence, and of Dayton Police Officer Andrew Clark, who responded to Combs' 911 call. Marjorie testified, through a Spanish-speaking interpreter, that at approximately 3:05 p.m. on October 16, 2002, she approached her husband in his office to discuss their relationship. (Combs indicated that he was a real estate appraiser who ran his business out of his home.) After arguing for approximately twenty to thirty minutes, Marjorie asked for the telephone. Combs, instead, used the cordless telephone in his office to call his mother. When Combs did not allow Marjorie access to the telephone, she grabbed his cellular telephone from his desk with her right hand Marjorie testified that Combs grabbed her right hand He then dropped the cordless telephone and grabbed Marjorie's other wrist with his free hand, and squeezed her arms tightly. Holding Marjorie's left arm, Combs twisted her right arm and caused her to fall down. Marjorie ran to a neighbor's home to ask them to call the police.
 {¶ 7} In his defense, Combs testified that Marjorie had entered his office to discuss their relationship. He stated that she began to grab his business papers off of his desk and to throw them "on the floor and around the room." He testified that he had called his father on his cordless telephone to ask him to come to his home, because his wife was "getting out of hand" Combs testified that Marjorie had grabbed his cellular telephone, which he uses as his business telephone. He also grabbed it, and they each held onto a portion of the telephone. Combs testified that while they both held onto the cellular telephone, they left the office and went through the hallway into the kitchen. There, Marjorie took "a closed fist swing" at him, hitting him on the right elbow and back and causing him to drop the cordless telephone. Combs then pulled his left arm down, and Marjorie lost her grip on the cellular telephone. Combs further testified that Marjorie grabbed his ears, particularly his left ear, and she made some scratches on his hand Marjorie then ran out the front door toward a neighbor's home. Combs indicated that he called the 911 operator at that time.
 {¶ 8} Two Dayton police officers were dispatched to Combs' residence at approximately 3:30 p.m. During the state's rebuttal case, Officer Clark testified that Combs had complained that his wife had hurt his ears and scratched his arms during a scuffle over a telephone. Clark further stated that he had interviewed Marjorie, initially without an interpreter, and that he had noted no injuries to Marjorie. (Marjorie and Combs both indicated that Sonya Jordan, who is not associated with the police department, came to the residence and interpreted for Marjorie toward the end of the police interview.) Clark had concluded that Marjorie had made no statements that Combs had assaulted her or threatened her in any violent manner. Stough testified that she had complained that Clark had not performed an adequate domestic violence investigation, because he had spoken to Marjorie without an interpreter.
 {¶ 9} On appeal, Combs claims that we should reverse his conviction, on the ground that the state's witnesses presented conflicting testimony regarding the events of October 16, 2002. He argues that the testimony demonstrated that Marjorie Combs and Gina Stough were biased and that their credibility was called into doubt during cross examination. Combs further argues that he had refuted his wife's accusations and that Clark had corroborated his account.
 {¶ 10} Upon review of the transcript of the bench trial, we cannot agree that Combs' conviction is against the manifest weight of the evidence. There was conflicting evidence by Combs and Marjorie as to whether Combs had grabbed his wife by both arms during their struggle for his cellular telephone, and whether he had twisted her arm and caused her to fall to the floor. In addition, although Clark had testified that Combs' ear was red and that he had scratches on his arm, Clark further testified that Marjorie had indicated to him that her arm had been twisted while holding the telephone and that she was suffering some injury. Accordingly, Clark's testimony could support portions of both Combs' and Marjorie's accounts of the events of October 16, 2002.
 {¶ 11} As acknowledged by Combs, "[a]t best in this matter, you have the credibility of the state's witnesses versus the credibility and evidence presented by [Combs]." It was the province of the trial court to determine this matter of credibility, and we are highly deferential to the trial court's determinations. State v. Hixson, Montgomery App. No. 19868, 2004-Ohio-1308. Although the trial court could have believed Combs' version of the events over that of his wife, the trial court did not lose its way in choosing not to do so.
 {¶ 12} We note that Combs has also argued that the state's evidence was insufficient. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law."State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. Although Combs did not make a Crim.R. 29 motion at trial, his "not guilty" plea preserved his right to challenge the sufficiency of the state's evidence on appeal. State v. Jones,91 Ohio St.3d 335, 346, 2001-Ohio-57, 744 N.E.2d 1163. Certainly, Marjorie's account of her October 16, 2002, altercation with Combs meets the elements of R.C. 2919.25(A). Moreover, given our determination that Combs' conviction is not against the manifest weight of the evidence, it necessarily is based on legally sufficient evidence. See State v. Rutledge (June 1, 2001), Montgomery App. No. 18462.
 {¶ 13} Combs' assignment of error is overruled.
 {¶ 14} The judgment of conviction will be affirmed.
Grady, J. and Young, J., concur.