OPINION
{¶ 1} Defendant-appellant Larry Gapen appeals from the trial court's judgment overruling his petition for post-conviction relief following a hearing.
 {¶ 2} Gapen contends that the trial court erred by rejecting his contention that his trial counsel rendered ineffective assistance during the penalty phase of his *Page 2 
Aggravated Murder trial. Based upon our review of the record, we conclude that the evidence supports the trial court's conclusion that Gapen's trial counsel was not ineffective. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} This case is before this court for the second time pursuant to post-conviction proceedings. We previously set forth a complete history of this case in State v. Gapen (January 31, 2005), Montgomery App. No. 20454, 2005-Ohio-441, which we need not repeat in full here.
 {¶ 4} Following a jury trial, Gapen was found guilty of several offenses including aggravated murder and attached death penalty specifications relating to the murder of Gapen's ex-wife, Martha Madewell, her male companion, Nathan Marshall, and Madewell's thirteen year old daughter, Jesica Young. The defense theory presented at trial was that Gapen did not kill the victims purposely, with prior calculation and design, but that Gapen is an average, normal person, not suffering from any mental illness, who was under extreme emotional stress as a result of his failed marriage to Madewell, and that he reached the breaking point, lost control and snapped, committing a crime of passion when he discovered Madewell lying together with Nathan Marshall, who was only partially clothed. While that theory might explain why Gapen murdered Madewell and Marshall, as evidenced by the jury's recommendation of life sentences for those killings, it does not explain why Gapen killed his thirteen-year-old stepdaughter, Jesica Young. Defense counsel offered the jury no independent explanation why Gapen killed Jesica Young, and did *Page 3 
not even mention that killing in their penalty phase closing argument.
 {¶ 5} During the penalty phase of the trial, Gapen presented expert psychological testimony from Dr. Robert Smith to show that Gapen is an average, normal person who does not suffer from any mental illness. That is consistent with the defense theory that these killings were a crime of passion committed by a lifelong outstanding citizen who just reached the breaking point, lost control and snapped.
 {¶ 6} Following the penalty phase of the trial, the jury recommended that Gapen be sentenced to death for the aggravated murder of Jesica Young committed with prior calculation and design. With respect to the aggravated murders of Madewell and Marshall, the jury recommended that Gapen be sentenced to life imprisonment without the possibility of parole. The trial court accepted the jury's recommendation and sentenced Gapen to death for the murder of Jesica Young, and life in prison without parole for the murders of Madewell and Marshall. The trial court also imposed additional consecutive prison terms totaling twenty-five years on the underlying felony offenses.
 {¶ 7} On direct appeal the Ohio Supreme Court dismissed the escape charge and the death-penalty specification relating thereto, but affirmed Gapen's other convictions and sentences, including the sentence of death arising from the murder of Jesica Young. State v. Gapen,104 Ohio St.3d 358, 2004-Ohio-6548. In affirming Gapen's death sentence, the Ohio Supreme Court noted that the jury could have found that Gapen's decision to murder Jesica Young was not mitigated at all, and that the crime-of-passion theory used to explain the murders of Madewell *Page 4 
and Marshall provided no mitigating reason for murdering Jesica Young.Id., at ¶ 140 and 176.
 {¶ 8} Gapen filed a petition for post-conviction relief in the trial court pursuant to R.C. 2953.21. Among his grounds for relief, Gapen alleged that he had been deprived of the effective assistance of counsel at trial as a result of counsel's failure to investigate and present relevant mitigating evidence relating to the murder of Jesica Young; specifically, expert testimony by Dr. Smith explaining why Gapen murdered Jesica Young, for whose murder Gapen was sentenced to death. Gapen's petition was supported by an affidavit from Dr. Smith who averred that defense counsel did not ask him anything about Jesica Young's death, such as why Gapen might have killed her, and did not ask Dr. Smith to investigate or develop mitigating evidence pertaining to Young's murder, and therefore he did not address that issue at trial. However, had defense counsel asked Dr. Smith about Jesica Young's death, Dr. Smith would have explained that her killing was not done consciously, with prior calculation and design, but rather just like the killings of Madewell and Marshall, it was a crime of passion that resulted from Gapen projecting the anger he felt toward Martha Madewell onto her daughter, Jesica Young, whom Gapen saw as the "mirror image" of Martha Madewell. Smith Affidavit at ¶ 8 and 16.
 {¶ 9} The State filed a motion for summary judgment on Gapen's post-conviction petition which the trial court granted, dismissing the petition without holding a hearing. On appeal, we reversed the summary judgment, and remanded the matter for a hearing on Gapen's claim that his trial counsel rendered ineffective *Page 5 
assistance by failing to present as relevant mitigating evidence Dr. Smith's opinion testimony explaining why Defendant attacked and killed Jesica Young. State v. Gapen (January 21, 2005), Montgomery App. No. 20454, 2005-Ohio-441.
 {¶ 10} On remand the trial court held a hearing at which Dr. Smith and David Greer, Gapen's lead trial counsel, testified. Following the hearing the trial court rendered an extensive, forty-page opinion, once again overruling Gapen's petition for post-conviction relief. The trial court found that Gapen had failed to demonstrate either deficient performance by trial counsel or resulting prejudice.
 {¶ 11} Gapen appeals from the judgment decision overruling his petition for post-conviction relief.
 II {¶ 12} Gapen's sole assignment of error is as follows:
 {¶ 13} "THE TRIAL COURT ERRED BY DENYING APPELLANT'S POSTCONVICTION PETITION'S FIRST GROUND FOR RELIEF, WHERE THE EVIDENCE SHOWED THAT DEFENSE COUNSEL FAILED TO INVESTIGATE AND PRESENT MITIGATING EVIDENCE RELEVANT TO THE OVERRIDING ISSUE IN THE CASE, RENDERING COUNSEL INEFFECTIVE AND LEADING TO APPELLANT'S SENTENCE OF DEATH."
 {¶ 14} The issue in this appeal is whether Gapen's trial counsel rendered ineffective assistance by failing to investigate and present mitigating evidence relevant to the murder of Jesica Young; specifically, Dr. Smith's opinion testimony explaining why Gapen attacked and killed Jesica Young. *Page 6 
 {¶ 15} A post-conviction proceeding is not an appeal from a criminal conviction; it is a collateral civil attack on the judgment. R.C.2953.21(J); State v. Calhoun (1999), 86 Ohio St.3d 279, 281,714 N.E.2d 905. Consequently, there is no constitutional right to post-conviction relief, except as conferred by statute. Calhoun, supra at 281; State v.Steffen (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67. R.C.2953.21(A)(1) governs a defendant's entitlement to post-conviction relief and reads in pertinent part:
 {¶ 16} "Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or grant other appropriate relief[.] * * * ."
 {¶ 17} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Strickland, supra. Even assuming that counsel's performance was deficient, a defendant must still show that the error had an effect on the judgment. State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where a defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. *Page 7 
 {¶ 18} In the recent case of In re B.W., Darke App. No. 1702,2007-Ohio-2096, at ?23-25, this court observed that inStrickland the United States Supreme Court stated:
 {¶ 19} "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Internal citations omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' (Internal citations omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (Internal citations omitted).
 {¶ 20} "The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's *Page 8 
unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.
 {¶ 21} "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, supra, at 689-690. State v.Lloyd (March 31, 1999), Montgomery App. No. 15927."
 {¶ 22} The decision of what m itigating evidence to present during the penalty phase of a capital trial is a matter of trial strategy.State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, at ¶ 189. Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are *Page 9 
virtually unchallengeable." Id. Even debatable trial tactics do not constitute ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 49, 402 N.E.2d 1189. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Bradley, at 142.
 {¶ 23} Moreover, hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the trial.State v. Cook (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70. Reviewing courts should refrain from second-guessing trial counsel in the presentation of mitigating evidence. State v. Mason (1998),82 Ohio St.3d 144, 169, 694 N.E.2d 932; State v. Post (1987), 32 Ohio St.3d 380,388, 513 N.E.2d 754. Attorneys are not required to pursue every conceivable avenue; they are entitled to be selective. State v.Murphy (2001), 91 Ohio St.3d 516, 542, 747 N.E.2d 765. Defense counsel is not deficient merely because there is another, better strategy available. Clayton at 49.
 {¶ 24} Gapen argues that even though his attorneys were well aware that one of the biggest hurdles they had to overcome in securing a life sentence was the brutality of the murder of Jesica Young and explaining why Gapen killed her, counsel did not ask Dr. Smith to explore or consider mitigating reasons for Gapen's attack on Jesica Young, and they did not follow up with Dr. Smith when his report alerted defense counsel to conflict between Gapen and Jesica Young and Gapen's perception that Jesica Young was one of the reasons for the marital problems between Gapen and Martha Madewell.
 {¶ 25} In short, Gapen claims that his attorneys failed in their duty to investigate mitigating evidence relevant to the murder of Jesica Young. That *Page 10 
argument necessarily depends for its validity upon Gapen's claim that defense counsel did not ask Dr. Smith to explore or consider mitigating evidence pertaining specifically to Jesica Young's murder. Dr. Smith testified at the post-conviction hearing that defense counsel only assigned him one task: to conduct a psychological evaluation to determine if Gapen had any significant psychiatric illnesses. Dr. Smith claims that he did exactly what defense counsel asked him to do, and he did not go beyond that and explore or develop mitigating evidence pertaining to Jesica Young's death because defense counsel did not ask him to do that.
 {¶ 26} Dr. Smith's testimony at the hearing was directly contradicted by the testimony of Gapen's lead defense counsel, David Greer, who testified that he did not restrict Dr. Smith's evaluation of Gapen to simply identifying psychiatric illnesses. Rather, Greer "put Dr. Smith out like a dog in a field full of birds to find all the birds that were there." Greer testified "I engaged him as an expert in psychology to examine Larry and to give me the benefit of his expertise on whatever opinions he had that might impact the issues of guilt, innocence, or mitigation in the case. In other words, he had carte blanche to examine Larry and to focus on what we could use forensically as trial lawyers in Larry's defense and in mitigation of the crimes that were involved." Importantly, the trial court found David Greer's testimony to be "profoundly more credible" than Dr. Smith's testimony. The trial court found that Greer did not put any limitation on the scope of the inquiry or opinions to be rendered by Dr. Smith, that Dr. Smith was hired as an expert witness to express his unlimited expert opinions, that Greer relied upon him, and that Dr. *Page 11 
Smith did not express or share with defense counsel during the trial his opinions regarding Jesica Young's murder that are now presented in Smith's post-conviction affidavit.
 {¶ 27} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. State v.LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 64; State v. DeHass
(1967), 10 Ohio St.2d 230. Because the trial court, as factfinder, had the opportunity to see and hear the witnesses at the hearing, its decision to credit David Greer's testimony over Dr. Smith's is entitled to substantial deference, and we will not interfere with that decision.State v. Combs (May 14, 2004), Montgomery App. No. 19853, 2004-Ohio-2419
at ¶ 4.
 {¶ 28} The testimony credited by the trial court, that of David Greer, demonstrates that Greer asked Dr. Smith to examine Gapen and give him the benefit of his expertise on whatever opinions he had that might impact guilt, innocence, or mitigation in this case. "The quest was what can Dr. Smith ascertain as far as what psychiatric or psychological issues played into the facts of the case, what is there about Gapen and his makeup that could be used in mitigation to flush out facts and then to dress them up with whatever opinions came to him from his study and experience." Furthermore, Dr. Smith was well aware of the type of information that would be relevant and helpful in mitigation, and what his role would be as an expert witness in the penalty phase of a capital trial. Dr. Smith had conducted evaluations in over one hundred capital cases, and had testified many times in death penalty cases, including in post-conviction proceedings where Dr. Smith had prepared an affidavit stating that additional evidence should have been *Page 12 
presented to the jury during the penalty phase of the trial.
 {¶ 29} David Greer's open-ended request to Dr. Smith to examine Gapen and give him the benefit of his expertise on whatever opinions he had that might impact guilt, innocence, or mitigation in this case, was broad enough to encompass any opinions or theories Dr. Smith had to explain why Gapen attacked and killed Jesica Young. If there was something psychologically about Gapen's situation that could explain the murders, reduce Gapen's moral culpability, or diminish the appropriateness of death as a penalty, it was incumbent upon Dr. Smith to communicate that information to defense counsel because that is exactly what counsel asked Smith to do. That does not constitute improperly shifting or delegating the burden to the defense expert witness to investigate, develop, and present relevant mitigating evidence. As David Greer testified, he takes the "smorgasbord" of information he is provided by the lay witnesses, the mitigation specialist, the expert witness and other sources, and then using his professional judgment, he presents the information he finds most appropriate.
 {¶ 30} Dr. Smith acknowledged that the opinion he now offers in his post-conviction affidavit, and at the post-conviction relief hearing, explaining why Gapen murdered Jesica Young, was formulated using facts he acquired during his interview of Gapen prior to the trial. Accordingly, as Dr. Smith admitted, he could have provided defense counsel at the time of trial with his opinion concerning why Gapen killed Jesica Young, but he did not do so because counsel did not ask for that information. Instead, Dr. Smith confined his opinion to the specific question counsel asked, whether Gapen suffered from any significant psychiatric illnesses. According *Page 13 
to David Greer's testimony, which the trial court found to be credible, evaluating Gapen for mental illness is not the only thing Dr. Smith was asked to do by defense counsel. David Greer hired Dr. Smith to aid him in understanding matters beyond the knowledge and experience of lay persons. David Greer is an attorney, not a psychologist. Greer relied upon Dr. Smith as an expert to provide whatever opinions his expertise could offer that might impact guilt, innocence, or mitigation, in order to lessen Gapen's moral culpability for the murders and diminish the appropriateness of death as the penalty. Obviously, defense counsel could not present Dr. Smith's explanation for the murder of Jesica Young when Smith failed to articulate or share that opinion with defense counsel.
 {¶ 31} Given the broad scope of defense counsel's request to Dr. Smith to give him the benefit of his expertise on whatever opinions he had that might impact guilt, innocence, or mitigation in this case, we do not conclude that defense counsel was ineffective for having failed to foresee or anticipate that Dr. Smith would harbor and fail to disclose unarticulated opinions or unexpressed theories that counsel needed to specifically inquire about, such as whether Dr. Smith had an opinion or explanation for why Gapen killed Jesica Young. Effective representation does not require prescience by counsel. Dr. Smith did not disclose to defense counsel the opinion now expressed in his post-conviction affidavit explaining why Gapen killed Jesica Young. Defense counsel did not perform deficiently by failing to foresee or predict that unarticulated opinion from the very expert hired for the purpose of sharing with counsel his forensic opinions about anything that might impact mitigation in this case. We agree with the trial court that defense counsel did not fail *Page 14 
to make reasonable investigative efforts with respect to mitigation evidence in this case.
 {¶ 32} Furthermore, the evidence demonstrates that the mitigation strategy adopted and presented by defense counsel was meaningful and undertaken after thorough investigation, thoughtful analysis, and careful consideration of all the facts and circumstances. Absent any mental illnesses or psychologically impaired thinking to explain why Gapen committed these gruesome murders, counsel focused on Gapen's history, character, and background to diminish the appropriateness of death as a penalty in this case. Counsel portrayed Gapen as a perfectly normal person, a lifelong upstanding citizen who any of the jurors would have liked to have as their friend or neighbor, but a person who was pushed past the breaking point by his failing marriage and snapped, committing a crime of passion when he found his ex-wife with another man, in order to reinforce that these murders were a complete aberration, and that Gapen posed no threat to anyone else and therefore life, not death, was the appropriate sentence.
 {¶ 33} Defense counsel arrived at their mitigation strategy only after interviewing several lay witnesses and acquaintances of Gapen, and utilizing the services of an investigator, a mitigation specialist, and a psychological expert, Dr. Smith. Defense counsel made a conscious decision to avoid a separate explanation for Gapen's attack on Jesica Young because counsel wanted to stay away from the horrible facts of that brutal crime so the jurors would not inappropriately consider those facts as aggravating circumstances. Counsel elected to present a theory of mitigation humanizing Gapen and emphasizing the lengthy *Page 15 
history of Gapen's good character and his law-abiding life before these murders. Defense counsel's strategic choices as to what mitigation to present, made after thorough investigation of the law, the facts and circumstances, and their available options, is virtually unchallengable and does not constitute deficient performance. State v. Bryan, supra;State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18. Furthermore, the existence of other mitigation theories does not establish ineffective assistance of counsel. Clayton, supra; State v. Turner (February 21, 2006), Franklin App. No. 04AP-1143, 2006-Ohio-761; State v. Post (1987),32 Ohio St.3d 380; State v. Combs (1994), 100 Ohio App.3d 90. Deficient performance by defense counsel in the penalty phase of the trial has not been demonstrated. Therefore, we need not address whether Gapen was prejudiced by counsel's performance. Strickland, supra, at 697. Ineffective assistance of counsel has not been shown.
 {¶ 34} Gapen's sole assignment of error is overruled.
 III {¶ 35} Gapen's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN, J., concurs.