[Cite as *State v. Bridges*, 2012-Ohio-4180.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                          :

     Plaintiff-Appellee                          :            C.A. CASE NO.    24926

v.                                                          :            T.C. NO.    11CRB4149

JEFFREY A. BRIDGES                              :                (Criminal appeal from
                                                                               Municipal Court)

     Defendant-Appellant                        :

                                                              :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____14th____ day of ____September____, 2012.

. . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101, Chief Prosecutor, City of Dayton, 335 W. Third Street, Room 372, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

RICHARD B. REILING, Atty. Reg. No. 0066118, 5045 N. Main Street, Suite 320D, Dayton, Ohio 45415
     Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

     **{¶ 1}** Jeffrey A. Bridges was convicted of assault after a bench trial in the

Dayton Municipal Court.  The court sentenced him to 180 days in jail, 179 days of which were suspended with credit for one day served, and placed him on six months of community control.  Bridges was also ordered to pay a $100 fine and court costs.

{¶ 2}    Bridges appeals from his conviction, claiming that his conviction was against the manifest weight of the evidence.  The State's response addresses the sufficiency of the State's evidence, as well as Bridges's argument that his conviction was against the manifest weight of the evidence.  We will focus on the issue raised by Bridges.

{¶ 3}    "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."  *State v. Wilson*, 2d Dist. Montgomery No. 22571, 2009-Ohio-525, ¶ 12.  When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 4}    Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses.  *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).  However, we may determine which of several competing inferences suggested by the evidence should be preferred.  *Id.*

{¶ 5} The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 6} According to the evidence at trial, at approximately 5:00 p.m. on May 7, 2011, Bridges and his girlfriend, Elizabeth Redenour, were at the home of Bridges's friends, Doug Williams and his girlfriend, Carol, who lived together on Alexander Drive. Williams was not home, so Bridges and Redenour conversed with Carol in her backyard while Bridges waited for Williams to return. Bridges drank approximately three beers while they socialized.

{¶ 7} During the conversation, Bridges made several derogatory remarks about "the n*****s in the neighborhood and just the problem that he [had] with certain groups being in the neighborhood and they need to go back to where they supposedly belong." These remarks were overheard by the Williams's next door neighbor, Franklin Printup, who was working in his backyard. Bridges was unaware of Printup's presence due to a six-foot privacy fence that separated the two properties. It is undisputed that Bridges's comment was made as part of the conversation between Bridges, Redenour, and Carol, and that it was not aimed at Printup.

{¶ 8} After hearing Bridges use "the n-word" a fourth time, Printup yelled over the fence to Bridges, telling him not to use that word again. Printup testified that Bridges responded by saying, "N*****, I'll go get my gun." Printup stated that he then told Bridges, "Damn your gun. Why don't you grab your nuts and meet me out front." Printup

indicated that he wanted to see who the person was who was threatening him, but he did not intend to escalate the situation. Printup testified that Bridges told him, "N*****, here I come."

{¶ 9} In contrast, Bridges testified that he was shocked when Printup made his presence known by yelling over the fence that he wanted to meet Bridges out front. Redenour further testified that Printup was angry when he "stuck his head over the fence" and said, "I'll show you a 'n'" and "step out front." Bridges stated that he went out to the front of Williams's house "basically to apologize to [Printup]."

{¶ 10} Bridges and Printup also presented contradictory versions as to what occurred when they went to the front of the properties. According to Printup, the two men met in the street in front of Williams's house. Bridges approached Printup aggressively and head-butted him. Printup told Bridges that he had to the count of five to back off; when Printup got to the count of three, Bridges head-butted him again. Printup testified that he then "mugged" Bridges, meaning that he pushed him back by putting his hand, with fingers spread, on Bridges's forehead and face. The "mugging" caused Bridges to bleed from or near his right eye. Printup turned Bridges around by his shoulders and shoved him toward Williams's back yard. As Bridges walked away, he told Printup that he was going to call the police. Printup's wife similarly testified that she saw Bridges head-butt Printup, and Printup respond by "mugging" Bridges. Printup, his wife, and Dayton Police Officer Randy Beane (one of three officers who responded to Bridges's 911 call) all believed that Bridges was intoxicated.

{¶ 11} Printup further testified that Bridges's actions caused his head to hurt and

that he took aspirin for the pain. Printup stated that he had no visible bruising from Bridges's head-butting. Officer Joseph Setty testified that he saw some redness on Printup's forehead.

{¶ 12} Bridges testified that he went to the front of Williams's house and told Printup that the conversation "had nothing to do with him." Bridges stated that Printup was "still just furious," and Printup came up onto Williams's yard, got into Bridges's face, and started poking him. Bridges stated that Printup poked him in the right eye twice, on the forehead, and in the corner of his left eye. It is undisputed that Bridges's right eye was injured as a result of the confrontation. Bridges testified that Printup stopped poking him when Printup's wife told Printup to get back in the house. Bridges stated that he did not respond to the attack, and he expressly denied head-butting Printup.

{¶ 13} After considering the evidence, the trial court concluded that Bridges was guilty of assault. The trial court initially found that the two men did not go to the front of Williams's house to engage in mutual combat. The court stated in its written decision:

> [D]ue to Printup and Bridges['s] lack of frankness it is difficult to ascertain their reasons for leaving the backyards to meet in the front of the property. * * * This court believes that Printup being provoked by the racial slurs and Bridges being intoxicated challenged each other to meet in front of the property. The aggressiveness of both men to reach the front of the property also indicates that they were not in a conciliation [sic] frame of mind, but there is nothing to indicate that they met in the front to engage in combat.

The court further found that Bridges's "version of the incident was not credible," and it

concluded: "This verbal confrontation, while voluntary by both parties, quickly turned physical. This court finds that Jeffrey Bridges initiated the physical attack by headbutting Franklin Printup causing him to have pain on his forehead."

{¶ 14} On appeal, Bridges claims that the evidence clearly demonstrated that Printup was the instigator, as Printup challenged Bridges to a fight and Bridges suffered an injury as a result of the confrontation. Bridges notes that Printup did not attempt to contact the police after the physical confrontation ended. Bridges further argues that "it is also clear that the Trial Court did not find either of the witnesses to be credible. Under these circumstances the Court was left to guess what may have occurred sequentially once the parties reached the front of the house. On this basis alone, Trial Court lacked sufficient proof as to who assaulted who."

{¶ 15} Upon review of the record, we find no fault with the trial court's conclusion. The trial court's written decision indicates that the trial court credited the State's evidence that Bridges initiated the physical confrontation in front of Williams's house by head-butting Printup. As stated above, the credibility of the witnesses and the weight to be given to their testimony were matters for the trial court, as the trier of fact, to determine. The fact that Bridges had a visible injury, while Printup apparently did not, does not require the conclusion that Printup was the instigator. In addition, Printup explained that he did not call the police because Bridges was indicating that he was going to call the police; the trial court could have reasonably accepted that explanation. The decision to credit the State's evidence did not create a manifest injustice.

{¶ 16} Bridges's conviction was not against the manifest weight of the evidence.

Moreover, given our determination that his conviction was not against the manifest weight of the evidence, the conviction necessarily was based on legally sufficient evidence. *State v. Combs,* 2d Dist. Montgomery No. 19853, 2004-Ohio-2419, ¶ 12.

{¶ 17}   Bridges's assignment of error is overruled.

{¶ 18}   The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Stephanie L. Cook
Richard B. Reiling
Hon. Deirdre E. Logan