[Cite as *State v. Cantrell*, 2016-Ohio-7623.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26975 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-1567 |
| | : | |
| JUSTAN B. CANTRELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 4th day of November, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by LYNNE R. NOTHSTINE, Atty. Reg. No. 0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

JIMMIE CHRISTON, Atty. Reg. No. 0038116, 131 North Ludlow Street, Suite 212, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Justan Cantrell appeals from his conviction and sentence following a bench

trial on charges of aggravated burglary with a firearm specification and having a weapon

while under disability.

**{¶ 2}** In his sole assignment of error, Cantrell challenges the legal sufficiency and manifest weight of the evidence to support his aggravated-burglary conviction.[1]

**{¶ 3}** The record reflects that Cantrell's convictions stemmed from his alleged forced entry into the victim's apartment armed with a handgun. At trial, the victim, Chatiya Cranford, testified that she resided in the apartment with her young son. With regard to the incident in question, Cranford stated that around 9:30 p.m. or so Cantrell's girlfriend, Becky Burns, opened the screen door and "came in" through the already-open front door. According to Cranford, Cantrell also entered the apartment but did not himself open either door. (Trial Tr. at 13-14). She clarified, however, that Cantrell did have to push the main front door farther open to fit inside. (*Id.* at 14). Cranford testified that Cantrell was waiving a handgun, pointing it at her, and threatening to kill her. (*Id.* at 14-15). Cantrell and Burns accused Cranford of calling the police on him earlier that day. (*Id.*). They then exited Cranford's apartment, and Cantrell fired a shot outside. (*Id.* at 15-16).

**{¶ 4}** On cross examination, Cranford acknowledged that she had felony convictions 14 or 15 years earlier for forgery and burglary. (*Id.* at 23-24). Cranford also claimed another adult female, identified only as "Shiann," was present in the apartment when Cantrell entered. (*Id.* at 20, 24). Cranford additionally reiterated that her main front door already was open, that Burns opened the screen door, and that Cantrell just "came on in." (*Id.* at 26). She also repeated her assertion that the main door was only partially open and that Cantrell had to push it open farther to enter while Burns held the screen

---

[1] Although Cantrell's actual assignment of error only references manifest weight, his appellate brief appears to raise both issues. (*See* Appellant's brief at 4, 6).

door open. (*Id.* at 26-32). Defense counsel challenged Cranford on her testimony that the main door was only "cracked" open and that Cantrell had to push it farther open, claiming she never had made such an assertion before. (*Id.* at 34). On re-direct examination, Cranford stated again that Cantrell physically had to move the "cracked open" front door to enter her apartment. (*Id.* at 39-40).

{¶ 5} The next witness was neighbor Lillia Arnold. She testified that she lived across the street from Cranford's apartment. Arnold stated that she saw Cantrell open Cranford's screen door and enter Cranford's apartment carrying a handgun. (*Id.* at 47). She then saw him come back outside and fire a shot into the air before leaving. (*Id.*). On cross examination, Arnold repeated her testimony that she saw Cantrell "grab the screen door and walk in." (*Id.* at 51). She added that the main front door already was open but could not specify "how open it was." (*Id.*). She agreed that the main door appeared to be open enough "so he could walk right in." (*Id.* at 52). Arnold estimated that the time was around 10:00 p.m. She explained that it was dark outside but that she could see because of the street lights. (*Id.*). She further stated that she had "no doubt" the handgun in Cantrell's possession was silver. (*Id.* at 53).

{¶ 6} The final witness was police officer Andrew Lane. He spoke with Cranford at her apartment after the incident. He confirmed that Cranford's apartment had two doors. (*Id.* at 60). He also stated that he was unable to locate a shell casing in the dark outside the apartment. (*Id.* at 61). He explained that some handguns, such as revolvers, require the shell casing to be ejected manually. (*Id.* at 60). On cross examination, Lane confirmed that his police report mentioned Cranford telling him Burns opened the screen door and Cantrell walked in. (*Id.* at 62-63). He also testified that Cranford told him Cantrell's

handgun was black. (*Id.* at 63).

{¶ 7} After hearing the evidence, the trial court filed an October 22, 2015 "Verdict and Judgment of Guilty." (Doc. #61). With regard to the conflicting testimony, the trial court found:

> The Defendant entered Ms. Cranford's apartment with force. The Court believes Ms. Arnold's testimony that she saw the Defendant opening the screen door and enter Ms. Cranford's apartment. The opening of a closed, unlocked door constitutes force. [Citation omitted]. It is quite possible that Ms. Cranford only saw the after effect of the Defendant opening the screen door (Becky holding the screen door), since the front door was only open a crack. Ms. Cranford testified to this fact both at the trial and the Preliminary Hearing. Joint Exh. I, p. 31-32. Even if the Court were to find that Becky in fact opened the unlocked screen door, letting the Defendant in as a matador with a cape would waive a bull through, the Defendant would have entered Ms. Cranford's home by stealth. Stealth means a "secret, sly, or clandestine act to avoid discovery and to gain entrance into . . . a residence of another without permission." [Citations omitted]. The Defendant was not given permission to be in Ms. Cranford's apartment. He entered her apartment at night. The Defendant in this scenario entered immediately after another person, Becky, used force to open the door. He made use of that forced opening. It is reasonable that Ms. Cranford would not expect the Defendant, whom she only knew as Becky's boyfriend, to enter her apartment at night without invitation.

However, as the Court noted, it believes Ms. Arnold's testimony that the Defendant opened the screen door, meaning the Defendant used force to enter Ms. Cranford's apartment.

(*Id.* at 4-5).

{¶ 8} The trial court subsequently overruled a motion for reconsideration directed toward its finding that Cantrell used force by opening the screen door himself. (Doc. # 67-68, 73). The trial court sentenced Cantrell to an aggregate six-year prison term. (Doc. #76).

{¶ 9} On appeal, Cantrell challenges the "force, stealth, or deception" element of his aggravated-burglary conviction. The applicable statute, R.C. 2911.11(A), provides in part that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * *." Cantrell argues that Cranford's testimony fails to support a finding that he trespassed by force and that the trial court's alternative finding of stealth is not supported by the record.[2] (Appellant's brief at 4-5). Therefore, he asserts that his aggravated-burglary conviction is based on legally insufficient evidence and/or is against the manifest weight of the evidence.

{¶ 10} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the

---

[2] Cantrell also makes a passing assertion that the crime of aggravated burglary had to be completed before he left the apartment. He notes that he fired his gun in the air after leaving the apartment. (Appellant's brief at 5). It is unclear whether Cantrell is attempting to raise this issue as an argument on appeal, as it has nothing to do with his assigned error or the remainder of his brief. In any event, the trial court did not rely on the gunshot outside to support his aggravated-burglary conviction. Instead, it explicitly relied on Cantrell's act of menacing inside the apartment by pointing his handgun at Cranford and threatening to kill her. (Doc. # 61 at 5). Cantrell's brief does not address this aspect of the trial court's ruling.

verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} With the foregoing standards in mind, we conclude that Cantrell's aggravated-burglary conviction is supported by legally sufficient evidence and is not against the weight of the evidence. As set forth above, the primary basis for the trial court's finding of a trespass by force was the testimony of Lillia Arnold. The trial court found her testimony to be the most credible, noting that she had "no dog in this fight, and

was simply an unfortunate witness of the events which unfolded at Ms. Cranford's apartment." (Doc. # 61 at 3). The trial court specifically credited Arnold's testimony "that she saw the Defendant opening the screen door and enter Ms. Cranford's apartment." (*Id.* at 4). This testimony was legally sufficient to establish the "force" element of aggravated burglary. *See, e.g., State v. McWilliams*, 2d Dist. Greene No. 2000 CA 89, 2001 WL 1203395, *3 (Oct. 12, 2001) (recognizing that opening a closed but unlocked door is sufficient to constitute the use of force).

{¶ 13} The trial court's determination that Cantrell entered Cranford's apartment by force also is not against the manifest weight of the evidence. As the trier of fact, the trial court was entitled to credit Arnold's testimony that Cantrell opened the screen door himself. Although it was not required to do so, the trial court, in its written decision, also plausibly reconciled Arnold's testimony with Cranford's. After reviewing the record, we do not find that the trial court clearly lost its way and created a miscarriage of justice in determining that Cantrell entered Cranford's apartment by force. The evidence does not weigh heavily against that determination or Cantrell's conviction. Finally, because the evidence supports the trial court's "force" determination, we need not address its alternative finding that Cantrell entered the apartment by stealth.

{¶ 14} Based on the reasoning set forth above, we overrule Cantrell's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Lynne R. Nothstine

Jimmie Christon
Hon. Michael W. Krumholtz