[Cite as *State v. Ball*, 2018-Ohio-605.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-54 |
| | : | |
| v. | : | Trial Court Case No. 17-CR-66 |
| | : | |
| JEFFERY BALL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of February, 2018.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

JENNIFER S. GETTY, Atty. Reg. No. 0074317, 7501 Paragon Road, Dayton, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Jeffery Ball was convicted after a jury trial in the Clark County Court of Common Pleas of one count of burglary, in violation of R.C. 2911.12(A)(3), a felony of the third degree.   The trial court sentenced Ball to three years in prison; Ball was not ordered to pay a fine, restitution, or costs.   Ball appeals from his conviction, claiming (1) that his conviction was based on insufficient evidence and was against the manifest weight of the evidence and (2) that his sentence was excessive and not supported by the record.   For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} The State's evidence at trial established the following facts.

{¶ 3} In December 2016, Karen Keaton lived with her husband and children in a duplex in Springfield, Ohio.   Ball resided in the other half of the duplex with his girlfriend, Jessica Hulsmeyer.

{¶ 4} Between December 2 and December 8, 2016, Keaton and her family were on vacation in South Carolina.   Keaton had told Ball the family would be going on vacation.   Keaton testified that neither Ball nor Hulsmeyer had a key to her house and that Ball did not have permission to enter her residence.

{¶ 5} On December 8, Keaton and her family returned and found that their television had been stolen.   In addition, one of the windows that had been closed when the family left was "slightly" open; this was the only window that did not lock.   There was no sign that the front door had been forced, and none of the windows had been damaged.

{¶ 6} At approximately 8:15 a.m. that day, Keaton called 911 to report that someone had broken into her home.   She indicated that only her television had been

stolen.   The dispatcher told Keaton that an officer would be sent to her house.

{¶ 7} After Keaton hung up with the dispatcher, she spoke with Ball, who admitted to her that he had gone through the window and had taken Keaton's television.   At 8:19 a.m. (i.e., after her conversation with Ball), Keaton called the dispatcher back to report that she had "gotten a confession out of somebody already" and that she was going to give him a chance to get her television back.   Keaton identified the perpetrator as Ball, and she told the dispatcher that Ball had admitted to taking the television to a pawn shop. The dispatcher encouraged Keaton to make a report with a police officer.   Ball left the duplex before a police officer arrived.

{¶ 8} Springfield Police Officer Justin Massie responded to Keaton's initial call, and the officer and Keaton tried several times to reach Ball on his cell phone.   Keaton testified that, when they ultimately reached Ball, he stated that he would work something out, but he would not return to the residence.   Officer Massie testified that Ball "seemed very apologetic, seemed very sincere about how he was going to make this right."   Keaton asked Ball why he had taken the television.   Ball responded, "I don't know.   I don't know."   Massie testified that Ball spoke "as if he was frantic and knew that he would be in trouble since I was there on the scene."   Officer Massie indicated that Ball had told them (Keaton and Massie) that the television was located at Pawn Stars.

{¶ 9} After hanging up with Ball, Keaton and Officer Massie went to Pawn Stars, where they located Keaton's television.   Officer Massie testified that Keaton did not have a serial number for her television, but the television had a toggle switch on the bottom that was unique to the television.   Keaton testified that she paid $25 to get her television back.   Keaton testified that Ball told her that he would pay her back.   A week later, Ball

went to Keaton's residence and dropped off $25.

{¶ 10} At trial, the State presented surveillance photographs from Pawn Stars, taken at 4:53 p.m. on December 3, 2016. Keaton identified the individuals in those photographs as Ball and Hulsmeyer. A receipt from the pawn shop showed that Hulsmeyer had sold a Samsung flat screen television to Pawnstar, Inc. for $25 on December 3, 2016; the serial number of the receipt matched the television in the store.

{¶ 11} Ball testified on his own behalf. When shown one of the surveillance photos from Pawn Stars, Ball stated, "That does not look like me." Defense counsel asked Ball to stand facing the same way the person in the photograph was facing, so the jury could compare. Ball testified that he did sell a television to Pawn Stars, but the television he sold was his personal property. Ball stated that his television had the toggle switch feature that Officer Massie had described. Ball testified that he sold his television in order to provide gas money for Hulsmeyer. Ball denied making admissions that he had stolen Keaton's television, and he denied taking $25 to her. Ball testified that he did not know that one of the windows in Keaton's home was broken.

{¶ 12} At trial, Ball admitted that he had a prior conviction for receiving stolen property. He testified that he had admitted his guilt to that prior charge because he was guilty of that offense. He stated that he did not do anything wrong this time.

{¶ 13} Ball was charged with two counts of burglary, in violation of R.C. 2911.12(A)(2), a second-degree felony, and R.C. 2911.12(A)(3), a third-degree felony. The charges were tried to a jury on May 2, 2017. The jury acquitted Ball of burglary in violation of R.C. 2911.12(A)(2), but found him guilty of violating R.C. 2911.12(A)(3).

{¶ 14} The trial court scheduled disposition for May 5, 2017. The court did not

order a presentence investigation, and it remanded Ball into custody without bond. The court did receive a one-page memorandum from the Clark County Adult Probation Office listing Ball's two prior criminal convictions. On May 5, 2017, the trial court sentenced Ball to three years in prison, the maximum sentence.

{¶ 15} Ball appeals from his conviction, raising two assignments of error.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 16} Ball's first assignment of error states:

The jury verdict finding Defendant guilty of burglary, a felony of the 3rd

degree, was against the manifest weight of the evidence.

{¶ 17} Ball's first assignment of error claims that his conviction for burglary was against the manifest weight of the evidence. In his appellate brief, he argues further that "the evidence presented to the jury was insufficient, as a matter of law, to prove his guilt beyond a reasonable doubt."

{¶ 18} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence

is more believable or persuasive." *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 20} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 21} Ball was convicted of burglary, in violation of R.C. 2911.12(A)(3). That statute provides:

(A) No person, by force, stealth, or deception, shall do any of the following:

* * *

(3) Trespass in an occupied structure or in a separately secured or

separately occupied portion of an occupied structure, with purpose to

commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.

"Trespass" is defined in terms of the following: "No person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another[.]" R.C. 2911.21(A)(1); *State v. Perry*, 2d Dist. Montgomery No. 26421, 2015-Ohio-2181, ¶ 27. "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "Force" is satisfied by "any effort physically exerted." *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21, quoting *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, 947 N.E.2d 1281, ¶ 18 (9th Dist.).

{¶ 22} Ball argues that his conviction must be reversed, because (1) there was no evidence that there was forced entry into Keaton's residence, (2) Keaton provided the only evidence that her television "ever existed," and (3) there was "nothing linking Mr. Ball to this crime other than Ms. Keaton's testimony, who apparently had past issues with Mr. Ball."

{¶ 23} Upon review of the record, we find ample evidence to support Ball's conviction for burglary in violation of R.C. 2911.12(A)(3). At the outset, Keaton testified that she and her family resided in a duplex, the other half of which was occupied by Ball and his girlfriend, Hulsmeyer. Photographs of the residence further indicate that the Keatons' half of the duplex was used as a residence. Ball does not dispute that Keaton's residence constituted an occupied structure.

{¶ 24} Keaton's testimony indicated that one window of her residence did not have a functioning lock and that the window was partially opened when she and her family

returned from vacation; the window was closed when the family left for vacation. There were no signs that anyone had broken in through the front door or a different window. Keaton testified that Ball admitted to her that he had entered the residence through a window and had stolen the Keatons' television. And, Keaton testified that Ball did not have permission to be in her residence. Thus, there was sufficient evidence that Ball had trespassed in the Keatons' residence.

{¶ 25} We have held that the opening of a closed but unlocked door is sufficient to constitute "force" for purposes of the burglary statute. *See, e.g., State v. Cantrell*, 2d Dist. Montgomery No. 26975, 2016-Ohio-7623, ¶ 12; *State v. McWilliams*, 2d Dist. Greene No. 2000 CA 89, 2001 WL 1203395, *3 (Oct. 12, 2001). Here, the opening of a closed but unlocked window was sufficient to establish that Ball entered the Keatons' residence by force.

{¶ 26} Finally, the State's evidence, if believed, was sufficient to prove beyond a reasonable doubt that Ball trespassed in the Keatons' residence with the purpose to commit a theft offense. Keaton testified that her television had been stolen from her residence and that Ball had admitted to her that he took her television. When Officer Massie and Keaton reached Ball by telephone, Ball did not expressly state over the telephone that he had stolen the television, but he was apologetic and stated that he would make things right. Ball told the officer and Keaton where they could find Keaton's television, and Keaton testified that she found her television at that location (Pawn Stars). Keaton further testified that Ball had paid Keaton $25 to compensate her for the cost of reacquiring her television from the pawn shop.

{¶ 27} In reaching its verdict, the jury was free to believe all, part, or none of the

testimony of each witness and to draw reasonable inferences from the evidence presented. *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. It was the province of the jury to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that Ball had committed burglary. Ball provided evidence that he did not steal Keaton's television and that he pawned his own television, but the jury was free to believe the State's version of events. Based on the totality of the evidence, we cannot conclude that the jury lost its way in finding Ball guilty of burglary, in violation of R.C. 2911.12(A)(3).

{¶ 28} Ball's first assignment of error is overruled.

### III. Ball's Sentence

{¶ 29} Ball's second assignment of error states:

The trial court erred in sentencing Mr. Ball to an excessive sentence that was not supported by the record and [was] contrary to law.

{¶ 30} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 31} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial

court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 32}** The sentencing range for a violation of R.C. 2911.12 as a third-degree felony varies depending on the defendant's criminal history. R.C. 2929.14(A)(3). If the offender previously has been convicted of or pleaded guilty in two or more proceedings to two or more violations of R.C. 2911.01 [aggravated robbery], R.C. 2911.02 [robbery], 2911.11 [aggravated burglary], or 2911.12 [burglary], the possible prison term is 12, 18, 24, 30, 36, 42, 48, 54, or 60 months in prison. R.C. 2929.14(A)(3)(a). Otherwise, the possible prison term is 9, 12, 18, 24, 30, or 36 months in prison. R.C. 2929.14(A)(3)(b). Based on his criminal history, Ball was eligible for community control, and the maximum possible sentence in this case was 36 months in prison.

**{¶ 33}** At the May 5, 2017 sentencing hearing, defense counsel asked the trial court to consider "the lighter side of any prison sentence should you decide to send him to prison." Ball did not make a statement.

**{¶ 34}** The prosecutor argued that Ball had never "acknowledged or accepted responsibility or accountability for his actions." Reviewing a cursory "memo" from the Clark County Adult Probation Department which reported Ball's criminal history, the prosecutor noted that Ball was convicted in Montgomery County of receiving stolen property, a fifth-degree felony, in November 2014, for which Ball was serving five years of community control. The prosecutor further noted that Ball was convicted of misdemeanor theft in May 2016, for which he received a suspended sentence of 5 days

in jail. As of December 28, 2016, Ball had a probation violation pending in the 2014 Montgomery County case. The prosecutor told the court, "You heard all the evidence, Your Honor, and I will let you use your discretion in crafting any disposition that you feel is appropriate in this case."

{¶ 35} In imposing a maximum three-year sentence, the trial court stated that Ball was on community control for receiving stolen property at the time of the offense and that he had a prior theft conviction. The judgment entry perfunctorily stated that the court had "considered the record, oral statements of counsel, the defendant's statement,[1] the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, the defendant's prior criminal record, and has balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12." The entry notified Ball of his post-release control requirements and the sanctions for violations.[2]

{¶ 36} Although Ball disputed Keaton's version of events at trial, Keaton did testify that Ball admitted to her that he had stolen her television, that he told her where the television was located, that she got her television back, and that Ball paid her $25, i.e., the amount that she had paid the pawn shop for her television. The parties agree that Ball has never served a prison term and has few prior convictions.

{¶ 37} Ball had previously been convicted of receiving stolen property, a felony of the fifth degree, and he was on community control at the time he committed the burglary at issue. Ball had committed a misdemeanor theft in 2015, also while on community

---

[1] Ball stated at the sentencing hearing that there was nothing he wanted to say.

[2] The advice in the judgment entry differs from that given orally at sentencing, but any issues this presents are not before us.

control. As of December 2015, Ball had a probation violation pending in the 2014 receiving stolen property case.

**{¶ 38}** On this record, whether another court presented with the same offense would have ordered a presentence investigation and/or weighed the statutory factors differently and not imposed the maximum prison sentence on a 24-year-old with a minimal criminal history and/or might have explained its rationale are not questions of which current law permits review. The sentence was within the statutory sentencing range, and we cannot conclude that the trial court's sentence was clearly and convincingly unsupported by the record.

**{¶ 39}** Ball's second assignment of error is overruled.

### IV. Conclusion

**{¶ 40}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies mailed to:

Andrew P. Pickering
Jennifer S. Getty
Hon. Douglas M. Rastatter