[Cite as *State v. Brown*, 2019-Ohio-4699.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-3 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-59 |
| | : | |
| ASHIA R. BROWN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of November, 2019.

. . . . . . . . . . .

JESSE J. GREEN, Atty. Reg. No. 0040265, Darke County Prosecutor's Office, Appellate Division, 504 South Broadway, Greenville, Ohio 45331
     Attorney for Plaintiff-Appellee

DANIEL F. GETTY, Atty. Reg. No. 0074341, 46 East Franklin Street, Centerville, Ohio 45459
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Ashia R. Brown was convicted of forgery, a fifth-degree felony, after a bench

trial in the Darke County Court of Common Pleas.[1]  Brown appeals, claiming that the court's conclusion that she was the perpetrator was against the manifest weight of the evidence.   For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} When reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 3} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses.   *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).   The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence.   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14.   A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances.   *Martin* at 175.

{¶ 4} On May 9, 2017, Christian Pressler was working as the office manager at Eikenberry's IGA in Greenville.   At approximately 9:15 p.m., two women wearing scrub shirts (white and pink, respectively) and ballcaps entered the store, came to the service

---

[1] The trial court imposed five years of community control, including 30 days in jail, with credit for 11 days.  It also required Brown to pay restitution, attorney fees, and court costs.   The trial court stayed Brown's jail sentence pending appeal.

desk, and presented payroll checks purportedly issued by Heartland of Greenville. Pressler testified that, after he approved the checks, the women went through the cashier's line, made purchases, and cashed the checks. The State presented surveillance videos from the store.

{¶ 5} Pressler identified a purported payroll check in the amount of $484.51, made payable to Ashia R. Brown from Heartland of Greenville (State's Ex. 1). The woman in pink signed that check at the service counter and provided Brown's identification to Pressler. Pressler wrote "SH756894" on the check and initialed it. Pressler noted at trial that the back of the check was signed "Ashia R. Brown" and the woman wrote her phone number under her signature; Pressler testified that he had not requested the phone number, and he stated that the cashier may have requested it.

{¶ 6} Pressler testified that the procedure to cash a check is: (1) he takes the individual's identification, (2) he writes down the individual's identification number, usually the driver's license number, (3) he gets a phone number, (4) he initials the check, and (5) the individual takes the check through a check-out line, signs the check, and cashes it. When asked, "Now, when you took the IDs, did you verify that's the person on the ID?" Pressler responded, "I matched the names of the check and IDs." (Tr. at 17.) At trial, Pressler identified Brown, the defendant, as the individual who was wearing the pink scrubs with the pink hat depicted in the video. Pressler stated that he was "100 percent" certain of his identification.

{¶ 7} On cross-examination, Pressler stated that he was supposed to look at the identification and then look at the person to make sure they match. He acknowledged that he "did not match the photo on the ID to the person but I did match the name, and I

did take down the ID number and she did present me with a phone number." (Tr. at 20.) He stated that he did not look at the photo on the ID; he just looked at the woman standing in front of him; he "didn't compare the two." (*Id.*) Pressler agreed with defense counsel that the surveillance videos were not clear enough to "make out facial features" or "to assist * * * in making identification of the woman in the pink hat." (Tr. at 32.) Pressler further acknowledged that on July 11, 2017 (two months after the incident), he was presented with a photo array that included a photo of Brown; Pressler was not able to make an identification from the photo array in July 2017. Pressler further acknowledged that he spent approximately 30 seconds with the woman in pink at the store.

{¶ 8} On May 10, 2017, then-Patrol Officer Morrisa Reed[2] of the Greenville Police Department was dispatched to the store to take a report. Mark Davis, the store's general manager, testified without objection that the Heartland check made payable to Brown had been returned as a forgery; the account number on the check did not exist. Reed obtained surveillance videos from Davis. Pressler was not present when Reed was at the store, and she asked Davis to request a written statement from Pressler. Later that day, Pressler prepared a written statement, which was provided to Reed.

{¶ 9} As part of her investigation, Reed obtained copies of the checks and copies of the receipts from the women's purchases. Once she identified Brown as a suspect, Reed obtained Brown's driving record, which included photographs of Brown and her address and driving history. The information stated that Brown's license was expired and was for identification only. Reed testified that the identification number on the license matched the number written on the check presented to Pressler. Reed testified

---

[2] Reed became a detective in June 2018, six months before the trial.

that the identification presented to Pressler was issued on February 18, 2015; Brown obtained a new identification on May 16, 2017.

{¶ 10} Reed did not interview Pressler as part of her investigation, nor did she speak with Brown. Reed testified that she believed the woman in pink was Brown after viewing the surveillance video, particularly the portion when the woman walked into the store.[3] Reed presented the case to a prosecutor on May 26, 2017.

{¶ 11} At the request of the prosecutor, Reed presented a photo line-up that included Brown to Pressler on July 11, 2017. Pressler was not able to identify anyone from the photo array.

{¶ 12} Brown and her boyfriend, Damon Grant, testified in Brown's defense. Grant testified that he has been Brown's boyfriend since February 2017. Grant stated that a party was held at his house on April 14, 2017, the day before his brother's funeral; he did not know everyone that was there. Grant further stated that he, Brown, and others had plans to go to Miami after the funeral. Prior to leaving, Grant and Brown noticed that Brown's wallet was missing; Grant last recalled seeing Brown's wallet in his kitchen during the party. Brown and Grant went to Miami without finding Brown's wallet. They returned on April 27 or 28, 2017. Grant testified that they never found Brown's identification, and Brown ended up getting a new one.

{¶ 13} On cross-examination, Grant stated that Brown had a purse that she did not carry much. He described it as a "little brown leather purse." He further stated that his identification also was missing, and that neither he nor Brown reported their IDs stolen.

---

[3] Reed further testified that she believed that Brown's co-defendant, Laquitta Byrd, was the second woman. Brown's trial transcript references that Byrd was acquitted after a bench trial that occurred one week before Brown's trial. (*See* Tr. at 10, 61.)

Grant testified that he paid for Brown to get a new license a few days after her birthday, which was at the end of April.

{¶ 14} Brown testified that she resided with Grant in April 2017. She stated that approximately 40 people were there for a party the night before Grant's brother's funeral. Brown stated that she placed her purse on the kitchen table and was in the kitchen most, but not all, of the time. Brown testified that she had a "black wristlet wallet that I carry on my wrist all the time. I didn't like carrying a purse so I always carry those." (Tr. at 80.) Brown discovered that her purse was missing the following day. The purse had her identification, her daughter's Social Security card, and other benefit and insurance cards. Brown testified that she looked for these items before she left for Miami and after she returned; she never located these items.

{¶ 15} Brown did not report her ID as stolen or replace it prior to going to Miami. Brown explained that she had a warrant out of Greene County and needed to serve 36 days, and she "wasn't ready to turn myself in to do what I had to do." Brown testified that she did not get a replacement ID for approximately a month, because she did not have the money to do it. She stated that Grant gave her money for her birthday, which she spent on her birthday, and that he later gave her more money. She had to spend $22 for a copy of her birth certificate to take to the BMV. Brown testified that she did not have a driver's license on May 9, 2017, the date of the offense.

{¶ 16} Brown testified that, prior to appearing in court on this case, she had never been in Darke County. She stated that she initially thought she was being arrested for her Greene County case. Brown testified that she had never been in the Eikenberry's IGA in Greenville. Brown did not know who the person in pink was. Brown stated that

the person walked differently than she did and that her (Brown's) chest was bigger. Brown also testified that the signature on the back of the check was not her signature; Brown stated that she had signed the jury waiver and other documents in this case, and her signature on those forms is different from that on the check.

{¶ 17} Brown further testified that a detective from Greene County spoke with her in September 2017 about another incident in which her ID was used to cash a check. Brown stated that a check had been cashed at a Lowe's by Wright Patterson Air Force Base. Brown had told the detective that the perpetrator was not her; Brown testified that she was shown photographs of the perpetrator, and the woman had tattoos that Brown did not have. Brown stated that she was not charged as a result of that incident.

{¶ 18} Brown denied that she knew Laquitta Byrd, and she testified that she did not recognize the woman in the white scrubs in the Eikenberry's IGA surveillance videos.

{¶ 19} On cross-examination, Brown stated that she starting carrying "a small, little medium Michael Kors brown purse" after her wristlet was stolen. Brown denied that the purse carried by the woman in pink was her purse.

{¶ 20} Brown agreed that Grant had given her money to obtain a new ID. The ID listed an address in Dayton, which Brown stated she used as her mailing address, but she indicated that she lived with Grant in Trotwood.

{¶ 21} On redirect examination, Brown testified that she did not recognize the phone number written on the check.

{¶ 22} Reed testified again as a rebuttal witness. She stated, without objection, that the purse in the surveillance video is a Michael Kors purse and that "the purse she [Brown] described on the stand matches that purse in the video." (Tr. at 107.)

{¶ 23} The trial court found Brown guilty of forgery, as charged. In reaching its verdict, the trial court was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented. *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. It was the province of the court, as the trier of fact, to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that Brown had committed the forgery of which she was accused. *State v. Ball*, 2d Dist. Clark No. 2017-CA-54, 2018-Ohio-605, ¶ 27.

{¶ 24} We recognize that Brown presented evidence -- through cross-examination of the State's witnesses and her own case-in-chief -- from which the trier of fact could have concluded that she did not commit the charged offense. Pressler acknowledged that he did not check to see if the ID presented to him at the store matched the woman standing in front of him. Despite his identification of Brown at trial, Pressler did not select Brown from a photo array a couple of months after the offense. The signature on the check differed noticeably from Brown's signature on court documents, and Brown testified that the phone number written on the check was not her phone number. Although the ID number on the check matched Brown's driver's license number, Brown and her boyfriend both testified that her ID had been stolen prior to the offense, and Brown obtained a new ID on May 16, 2017, a week after the offense (and about a year prior to its expiration date). Brown claimed that her stolen ID also was used illegally in Greene County, although there was no corroboration of this testimony. Brown claimed to have never been in Darke County prior to her arrest on this charge.

{¶ 25} Nevertheless, the trial court viewed the surveillance video of the May 9, 2017 incident, which showed a woman who, from what could be seen, looked

substantially similar to Brown (if not Brown herself); the video did not exonerate Brown. Pressler identified Brown as the offender at trial and claimed to be 100 percent certain of his identification. Reed testified that the purse carried by the perpetrator was a Michael Kors purse, similar in style to the Michael Kors purse that Brown stated that she owned. We cannot conclude that this case presents an exceptional circumstance where the finder of fact "clearly lost its way" and its guilty verdict was against the manifest weight of the evidence.

{¶ 26} Brown's assignment of error is overruled.

{¶ 27} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and HALL, J., concur.


Copies sent to:

Jesse J. Green
Daniel F. Getty
Hon. Jonathan P. Hein