[Cite as *State v. Million*, 2012-Ohio-1774.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee              :          C.A. CASE NO.     24744

v.                                        :          T.C. NO.     11CR507

TEVIN K. MILLION                          :          (Criminal appeal from
                                                    Common Pleas Court)

    Defendant-Appellant          :

                                          :

. . . . . . . . . .

## O P I N I O N

Rendered on the ____20th____ day of ____April____, 2012.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BYRON K. SHAW, Atty. Reg. No. 0073124, 4800 Belmont Place, Huber Heights, Ohio 45424
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Tevin K. Million was indicted for aggravated robbery (a first degree felony) with a firearm specification, having a weapon while under disability (a third degree

felony), and domestic violence (a fourth degree misdemeanor). Million pled guilty to having a weapon while under disability, but proceeded to trial on the remaining two counts. After a bench trial, the trial court found Million guilty of domestic violence, aggravated robbery, and the firearm specification. The court sentenced Million to four years in prison for both the aggravated robbery and having a weapon while under disability, to be served concurrently, and an additional three years for the firearm specification, to be served consecutively to and prior to the definite four-year sentence. Million also received 30 days in jail for the domestic violence, with credit for time served. Million's aggregate sentence was seven years.

{¶ 2} Million appeals from his conviction, claiming that his convictions for aggravated robbery with a firearm specification and domestic violence were against the manifest weight of the evidence. The State's response addresses the sufficiency of the State's evidence, as well as Million's argument that his convictions were against the manifest weight of the evidence. We will focus on the issue raised by Million.

{¶ 3} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 4} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.*

{¶ 5} The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin,* 20 Ohio App.3d at 175.

{¶ 6} According to the victim, Shantel C., shortly before noon on February 11, 2011, Million called Shantel, the mother of his child and his former girlfriend, and told her that a $1,700 tax refund had been seized due to his unpaid child support. Million said that Shantel soon would be getting a check and that he needed half of that money. Shantel responded to Million that he did not do anything for their son, so she would not give him the money.

{¶ 7} Soon afterward, Million walked to Shantel's home (which she shared with her parents) to talk to her about the money. As Million neared the house, Shantel was sitting in the passenger seat of a car parked in front of her house; her friend, Andrew Stiakakis, was in the driver's seat. Shantel testified that Million called her on her cell phone and told her to get out of the car before he got in. Shantel got out of the car, holding her

toddler, and was confronted by Million. Million demanded that Shantel give him $850, and he started "pulling on" and putting his hands in Shantel's pant pockets. Million asked Shantel, "Well, if you ain't got the money, your friend [referring to Stiakakis] got the money then?" Million showed Shantel a portion of the black and silver handgun that he carried in his pocket and told her, "If you don't give me my money, I'm going to kill you." Shantel's grandmother, who had driven up to the house at the same time that Million arrived, tried to get between Shantel and Million and to convince Million to leave.

{¶ 8} Shantel called the police with her cell phone. As she talked to the dispatcher, Million grabbed at the phone and attempted to end the call. In the process, Million pulled Shantel's hair and pressed several buttons on the phone. Soon thereafter, Million walked away and headed down a nearby alley, stopping briefly to talk to Shantel's mother.

{¶ 9} Officer Greg Thornton testified that he responded to Shantel's residence on a domestic violence report, which had indicated that a "Kevin Million" was assaulting the victim and had a gun. (Officer Charles Hurley, who also responded to that dispatch, heard "Tevin Million.") As Thornton and his partner drove to the scene, they saw a man matching Million's description at the end of the alley near the residence. The officers circled the block and parked near Shantel's house. Shantel indicated that Million had gone down the alley, but her mother told the officers that Million was "long gone." The officers located Million walking between nearby houses. Million fled on foot, but he was apprehended within a couple of blocks.

{¶ 10} The police officers then looked for the gun that Million reportedly had; they

were unable to locate it. After the police left, Shantel's father found Million's gun in a large bush in front of a house near his home. Shantel's mother contacted the police again, and the family gave the gun to Officer Hurley, who responded to that call.

{¶ 11} Several individuals witnessed the confrontation between Shantel and Million. Shantel's grandmother ("Grandmother") testified that she was driving Shantel's mother home when she saw Shantel and Million out by Shantel's friend's car. Grandmother parked her car behind the friend's car, and she immediately got out and went over to Shantel and Million. Grandmother heard Million say that he wanted the money, and she saw Million "pulling on" Shantel, reaching into her pockets, and trying to get money from her. Grandmother told Million that Shantel did not have money, that Shantel would give him money when she got it, and that he was not supposed to be there at the house. Grandmother heard Million say in a "demanding" voice, "I want $850" and "somebody [is] going to give it to me." She also heard Million ask if Shantel's friend had money. Grandmother observed Million "tussling" with Shantel while Shantel was on the phone with the police. She indicated that Million tried to take the phone away or hang it up. Grandmother did not see a gun, and she did not remember hearing Million threaten to kill Shantel.

{¶ 12} Shantel's mother ("Mother") testified that she was at Grandmother's home during the morning of February 11, 2011, when she received a call from Million, who said that he needed $850 that was taken from a tax refund. When Mother was being driven to her home by Grandmother, Mother saw Million walking down the alley toward her home. After Grandmother parked the car in front of Mother's house, Mother got out of the car, went onto the porch of her home, and watched the interaction between Shantel and Million

while she was on hold on the phone. Mother testified that Million was determined to get the money. She heard him say, "I got to have this money. You going to give me $850. If you don't got it, your friend got it." Mother saw Million lift up his shirt with his right hand and show Shantel the butt of his gun. Million did not take the gun out, but showed Shantel that he had it.

{¶ 13}  When Shantel called the police, Mother saw Million try to take the cell phone out of Shantel's hand, and she heard Shantel say, "You're pulling my hair." Mother further stated that Grandmother was in between Shantel and Million during their confrontation, and she heard Million telling Grandmother to "Go, Granny." Mother further testified that, after Million started to walk away, she went to the alley to talk to him. When Million heard the police, he went down the alley away from Shantel's residence, and Mother walked back toward her house.

{¶ 14}  Andrew Stiakakis, Shantel's friend, also testified about the altercation. Stiakakis stated that he remained in his car during the entire encounter and, unlike other witnesses, he recalled that most of the conversation between Shantel and Million occurred while Shantel was seated in the vehicle. However, he testified that Million came up and asked Shantel for money, and he also heard Million ask Shantel if her friend had money. Stiakakis did not see Million grab for Shantel's phone or see him with a gun, but he heard Million threaten to kill Shantel. Stiakakis saw Million walk away through an alley.

{¶ 15}  Million testified on his own behalf. He described his "off and on" relationship with Shantel, and expressed that Shantel had become upset at various times because he was seeing other girls. He testified that Shantel was aware that he carried a gun.

He denied that he ever hit, punched, or threatened Shantel prior to February 11, 2011.

{¶ 16}    As to the incident on February 11, Million testified that he was trying to convince Shantel to give him half of the money whenever she received it.    Although he had been trespassed from Shantel's residence, he said that he went there on February 11 to see his son and to talk to her about the money.    Million admitted that he had a loaded gun in his pocket when he went to Shantel's residence, but he denied showing, exhibiting, or threatening Shantel with the gun.    Million also denied making any threats that he would hurt Shantel.    Million stated that he ran from the police because he did not want to get caught with the gun.

{¶ 17}    At the conclusion of the bench trial, the trial court found Million guilty of aggravated robbery with the firearm specification and domestic violence.    Although the court indicated that it did not need to give the facts to support its decision, it stated that it did not find Million to be credible.    The court found that Million had made a "present demand for money," not a future request, as shown by his going through Shantel's pockets and asking if her friend in the car had money.    The court further found that Million had a weapon on his person and that he indicated his possession of that weapon.    The court stated that "[t]hat is supported by the present sense impression made on that 9-1-1 call when Shantel said, you know, he's got a gun or he's showing me a gun."    The court found that the State also proved the firearm specification beyond a reasonable doubt.    As to the domestic violence count, the court indicated that several of Million's actions supported a guilty finding for domestic violence.    It noted that Million pulled Shantel's hair, showed her the gun, and told Shantel that he was going to kill her.

{¶ 18}    On appeal, Million argues that his convictions for aggravated robbery and domestic violence are against the manifest weight of the evidence because Shantel was not credible and her testimony refuted the conclusion that he committed those offenses.    Million notes that Shantel's Domestic Violence Written Statement did not mention a robbery or that Million had grabbed her hair.    He emphasizes that Shantel testified at trial that Million had told her, "You'll be getting a check in a couple of days.   I need that – I need half."    Million thus argues that he "could not have shown up to commit [an] aggravated robbery of the victim of child support monies when he already knew she didn't have the money in her possession per [her] own testimony beside knowing Shantell [sic] was unemployed since 2010."    He also notes that he allegedly brandished a weapon after searching her pockets and learning that she did not have any money, thus suggesting that he did not display his weapon as part of a theft offense.

{¶ 19}    The credibility of the witnesses and the weight to be given to their testimony were matters for the trial court, as the trier of fact, to determine. The trial court did not lose its way simply because it chose to believe the State's version of the events, which it had a right to do.   Although Shantel's testimony indicates that Million knew that she had not yet received the money, the trial court did not lose its way when it found that Million's demands for money – coupled with his searching of Shantel's pockets, his question about whether Shantel's friend had money, and the displaying of a loaded gun – demonstrated that Million was attempting to obtain money from Shantel on February 11.   Moreover, to constitute aggravated robbery, it was not necessary that Million actually obtain any money from Shantel; R.C. 2911.01(A)(1) prohibits individuals from having and indicating the

possession of a deadly weapon "in attempting or committing a theft offense" or "in fleeing immediately after the attempt or offense." There was ample evidence to support the trial court's conclusion that Million committed aggravated robbery when he indicated his possession of a gun while attempting to force Shantel to give him money.

{¶ 20} Million's conviction on the firearm specification also was not against the manifest weight of the evidence.

R.C. 2941.145 permits imposition of a mandatory three year prison term where the indictment specifies, and the jury finds:

"* * * that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offenses."

R.C. 2923.11(B) defines "firearm" and provides:

"(1) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

"(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

Both a firearm's existence and its operability may be inferred from the surrounding facts and circumstances. It is not necessary to admit the firearm used during the crime in evidence in order to establish a firearm specification. *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932; *State v. Knight,* Greene App. No.2003CA14, 2004-Ohio-1941. A victim's belief that the weapon is a gun, together with the intent on the part of the accused to create and exploit that belief for his own criminal purposes, is sufficient to prove a firearm specification. *State v. Greathouse,* Montgomery App. No. 21536, 2007-Ohio-2136.

*State v. Vann*, 2d Dist. Montgomery No. 22818, 2009-Ohio-5308, ¶ 22-27.

{¶ 21} Shantel and her mother both testified that Million had a gun, had demanded money from Shantel, and had displayed a portion of the gun to Shantel to show her that he had it. Shantel's father located a gun in front of a nearby house, and Officer Hurley, who retrieved the gun from Shantel's family, testified that the gun was loaded, with eleven bullets in the magazine and one in the chamber. Million acknowledged that he had the gun when he spoke with Shantel on February 11 and that the gun had bullets in the magazine. He further stated that he carried the gun for protection and so he could use it if he had to. Although there was no evidence from a firearm expert that the gun was tested and found to be operable, there was substantial circumstantial evidence from which the trial court could have reasonably concluded that Million had an operable firearm when he attempted to take money from Shantel and that he indicated his possession of that firearm during the commission of the robbery.

**{¶ 22}** Finally, we agree with the trial court that Million's conviction for domestic violence was supported by his pulling Shantel's hair, his verbal threat to kill her, and his displaying of the gun in a threatening manner.

**{¶ 23}** Million's convictions were not against the manifest weight of the evidence. Moreover, given our determination that Million's convictions were not against the manifest weight of the evidence, the convictions necessarily were based on legally sufficient evidence. *State v. Combs*, 2d Dist. Montgomery No. 19853, 2004-Ohio-2419, ¶ 12.

**{¶ 24}** The sole assignment of error is overruled.

**{¶ 25}** The trial court's judgment will be affirmed.

. . . . . . . . . .

HALL, J. and FISCHER, J., concur.

(Hon. Patrick F. Fischer, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Michele D. Phipps
Byron K. Shaw
Hon. Mary Katherine Huffman