[Cite as *State v. Pacific*, 2021-Ohio-973.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28804 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-2234 |
| | : | |
| CHRISTOPHER PACIFIC | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of March, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by JAMIE J. RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CARLO C. MCGINNIS, Atty. Reg. No. 0019540, 55 Park Avenue, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Christopher Pacific was found guilty after a bench trial in the Montgomery County Court of Common Pleas of breaking and entering, a felony of the fifth degree. The trial court sentenced Pacific to up to five years of community control.

{¶ 2} Pacific appeals from his conviction, claiming that (1) the trial court erred in allowing the State to amend the indictment and bill of particulars at trial, (2) the trial court erred in failing to grant a reasonable continuance after amending the indictment, (3) the trial court erred in denying his Crim.R. 29 motion, (4) his conviction was against the manifest weight of the evidence, and (5) the judgment entry was inconsistent with the trial court's orally-pronounced sentence. For the following reasons, the trial court's judgment will be affirmed.

### I. Factual and Procedural History

{¶ 3} On July 7, 2019, the Montgomery County Sheriff's Department responded to 5345 Germantown Pike on a reported breaking and entering. Carol Slater, who lived at that residence, informed the deputies that she heard voices and noises at a neighboring property, a dilapidated former commercial nursery that consisted of a series of connected buildings. The deputies walked around the greenhouse buildings and heard voices and mechanical noises coming from inside. After entering the greenhouse, the deputies encountered Pacific and two other individuals. Pacific had a chainsaw and was cutting into a motor or air conditioning unit that was mounted to the ceiling. The deputies placed the three individuals under arrest.

{¶ 4} On August 8, 2019, Pacific was indicted on one count of breaking and

entering (unoccupied structure), in violation of R.C. 2911.13(A). The indictment identified the unoccupied structure as "a nursery building, located at 5345 Germantown Pike, Jefferson Township, Ohio." Pacific requested a bill of particulars, which the State provided. The bill of particulars stated, in relevant part, that the State would prove:

> [O]n or about July 7, 2019, in Montgomery County, Ohio, the Defendant, Christopher Pacific, did by force, stealth, or deception, trespass in an unoccupied structure located at 5345 Germantown Pike, Jefferson Township, Ohio, with purpose to commit therein any theft offense, as defined in R.C. 2913.01(K), or any felony; in violation of R.C. 2911.13(A), a felony of the fifth degree. In particular, the day of the incident, Montgomery County Sheriff's Deputies responded to a breaking and entering in progress call where they located Defendant in a secured greenhouse-type building actively sawing at a motor to remove it from the structure.

{¶ 5} The matter proceeded to a bench trial on January 28, 2020. The State presented the testimony of Slater, two of the responding deputies, and Donald Wang, the alleged owner of the greenhouse property. During the trial, the State presented evidence that the address of the greenhouse actually was 5335 Germantown Pike, an abutting property that shares a driveway with 5345 Germantown Pike. After the State rested, the prosecutor moved, pursuant to Crim.R. 7(B), to amend the indictment and the bill of particulars to reflect that address. The trial court granted the motion over defense counsel's objection. The court also denied defense counsel's request for a continuance based on the amendment of the indictment. The court reasoned that, because the indictment described the property as a nursery and defense counsel had visited that

property, Pacific was not prejudiced by the amendment.

{¶ 6} Defense counsel moved for a judgment of acquittal under Crim.R. 29, arguing that the evidence was insufficient to sustain a conviction for the offense. The trial court denied the oral motion. The defense then offered several exhibits, but called no witnesses. Defense counsel renewed his Crim.R. 29 motion after the defense rested; that motion also was denied.

{¶ 7} The trial court found Pacific guilty of breaking and entering and ordered a presentence investigation. At the sentencing hearing, the trial court misstated that Pacific had been found guilty of a felony of the fourth degree. The court sentenced Pacific to up to five years of community control, and it orally notified him that he could be required to serve 18 months in prison if he violated that community control. The trial court's written judgment entry, however, correctly indicated that breaking and entering was a felony of the fifth degree, and it ordered that Pacific could be required to serve 12 months – not 18 months – if he violated his community control sanctions.

{¶ 8} Pacific appeals from his conviction, raising five assignments of error.

## II. Amendment of the Indictment

{¶ 9} In his first assignment of error, Pacific claims that the trial court erred in permitting the State to amend its indictment and bill of particulars at the conclusion of its case-in-chief.

{¶ 10} "The purposes of an indictment are to give an accused adequate notice of the charge, and enable an accused to protect himself or herself from any future prosecutions for the same incident." *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 7. Crim.R. 7(B) effectuates this purpose and sets forth the

sufficiency requirements of an indictment. *State v. Young*, 2d Dist. Greene No. 2019-CA-18, 2020-Ohio-1044, ¶ 28. That Rule requires that the indictment be signed and that it "contain a statement that the defendant has committed a public offense specified in the indictment." Crim.R. 7(B). Indictments may be written "in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." *Id.*

{¶ 11} Crim.R. 7(D) authorizes the trial court – at any time before, during, or after a trial – to amend the indictment in respect to "any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." We previously concluded that an amendment to an indictment regarding the location of the offense does not change the name or identity of the offense. *See State v. Weber*, 2d Dist. Montgomery No. 25508, 2013-Ohio-3172, ¶ 29 (amendment of indictment to allege that the rape occurred in a different county, as reflected by the evidence, did not change the name or identity of offense and was not an abuse of discretion).

{¶ 12} "Whether an amendment changes the name or identity of the offense charged is a matter of law that we review de novo." *State v. Villamor-Goubeaux*, 2016-Ohio-7420, 72 N.E.3d 1185, ¶ 54 (2d Dist.), citing *State v. Frazier*, 2d Dist. Clark No. 2008-CA-118, 2010-Ohio-1507, ¶ 22. "If the amendment does not change the name or identity of the crime charged, then we apply an abuse of discretion standard to review the trial court's decision to allow a Crim.R. 7(D) amendment." (Citations omitted.) *Frazier* at ¶ 23. A trial court abuses its discretion "when it makes a decision that is unreasonable,

unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 13} In this case, the indictment and bill of particulars alleged that on July 7, 2019, Pacific committed the offense of breaking and entering, in violation of R.C. 2911.13(A), a felony of the fifth degree. Both documents specified that the unoccupied structure was a nursery/greenhouse, but incorrectly listed the property's address as 5345 Germantown Pike. At trial, the State's evidence established that 5345 Germantown Pike was Slater's residential address, and the nursery was located at 5335 Germantown Pike.

{¶ 14} Under these facts, Crim.R. 7(D) authorized the trial court to correct the misidentification of the nursery's address in the indictment and bill of particulars. The amendment did not alter the elements that the State was required to prove, and the correction did not change either the name or identity of the crime charged.

{¶ 15} Moreover, nothing in the record suggests that Pacific was prejudiced by the amendment. There was no dispute that the greenhouse property was the alleged scene of the offense. The bill of particulars indicated that Pacific was found in the greenhouse attempting to remove a motor from that property, and all of the State's witnesses testified about their actions with respect to the nursery property. Defense counsel indicated at trial that he had visited the greenhouse property, and he cross-examined witnesses regarding the condition of that property. Defense counsel was prepared to present evidence challenging the State's evidence regarding the ownership of the nursery property and whether Pacific lacked privilege to be in the greenhouse. The trial court did not abuse its discretion in permitting the amendment of the indictment and bill of particulars to correct the property's address.

{¶ **16**} Pacific's first assignment of error is overruled.

### III. Denial of Continuance

{¶ **17**} Pacific's second assignment of error claims that the trial court should have granted him a continuance after allowing the amendment of the indictment and bill of particulars.

{¶ **18**} Crim.R. 7(D) further provides:

If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to * * * a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. * * * No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

{¶ **19**} Pacific requested a continuance in conjunction with his objection to the State's motion to amend the indictment and the bill of particulars, arguing that the amendment could have an impact on defense strategy. The trial court denied that request, stating that it found no indication that Pacific was prejudiced, particularly given

that defense counsel had gone to the nursery prior to trial. The court asked defense counsel, "So what would you have done different? What's the issue? I don't get it." Defense counsel did not identify any issues or strategies that were affected by the amendment.

{¶ 20} Pacific did not thereafter file a motion for a new trial. Accordingly, pursuant to Crim.R. 7(D), the trial court's denial of his request for a continuance is not reviewable. Even if it were, the record does not support a conclusion that a failure of justice resulted from the denial of the continuance.

{¶ 21} Pacific's second assignment of error is overruled.

### IV. Sufficiency and Manifest Weight of the Evidence

{¶ 22} In his third and fourth assignments of error, Pacific claims that the trial court erred in denying his Crim.R. 29 motion for an acquittal and that his conviction was against the manifest weight of the evidence.

{¶ 23} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 24} When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a claim based on the sufficiency of the evidence. *State v. Page,* 2d Dist. Montgomery No. 26670, 2017-Ohio-568, ¶ 7, citing

*State v. Sheppeard*, 2d Dist. Clark No. 2012-CA-27, 2013-Ohio-812, ¶ 51. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 25} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12; see *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 26} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of

particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

**{¶ 27}** "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins* at 386. However, where an appellate court determines that a conviction is not against the manifest weight of the evidence, the conviction is necessarily based on legally sufficient evidence. *State v. McLoughlin*, 2d Dist. Champaign No. 2017-CA-22, 2018-Ohio-2426, ¶ 8; *State v. Million*, 2d Dist. Montgomery No. 24744, 2012-Ohio-1774, ¶ 23.

**{¶ 28}** The trial court found Pacific guilty of violating R.C. 2911.13(A), which provides: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony." Pacific challenges the sufficiency of the State's evidence and the trial court's conclusion regarding the weight of the evidence as to each element of the offense.

*A. Force, Stealth, or Deception*

**{¶ 29}** First, Pacific claims that the State failed to establish that Pacific acted with "force, stealth, or deception." It appears undisputed that deception is inapplicable to this case.

**{¶ 30}** "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

Accordingly, the requirement of "force" is satisfied by "any effort physically exerted." *State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205, ¶ 16 (2d Dist.), quoting *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21. The opening of a closed, but unlocked, door or window is sufficient to meet this requirement. *E.g., State v. Ball*, 2d Dist. Clark No. 2017-CA-54, 2018-Ohio-605, ¶ 15 (defendant's opening of closed but unlocked window was sufficient to establish he entered by force); *State v. Cantrell*, 2d Dist. Montgomery No. 26975, 2016-Ohio-7623, ¶ 12 (witness's testimony that defendant opened a screen door to walk through an open inner door of victim's apartment was sufficient to prove "force").

{¶ 31} The term "stealth" is not defined in the Ohio Revised Code, but we and other Ohio appellate courts have defined it to mean "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within" the relevant structure. *State v. Johnson* at ¶ 18, citing, *e.g., State v. Reeves*, 2d Dist. Montgomery No. 16987, 1999 WL 129469 (Mar. 12, 1999). We have commented that evidence that a defendant entered through a back entry secluded from view was sufficient to establish the element of stealth. *Reeves* at *6, citing *State v. Wolhfeil*, 8th Dist. Cuyahoga No. 51983, 1987 WL 9133 (Apr. 2, 1987); *Johnson* at ¶ 19. The fact that an incident occurs in broad daylight does not necessarily preclude evidence of stealth. *See, e.g., Johnson* at ¶ 20; *In re Markunes*, 2d Dist. Montgomery Nos. 15601 & 15617, 1996 WL 531586 (Sept. 20, 1996) (evidence of stealth existed where there was sufficient evidence that defendant's conduct could be construed as looking to see if the "coast was clear" before entering the open garage in broad daylight).

{¶ 32} According to the State's evidence at trial, the nursery property is a 7.5 acre

parcel of land situated between Germantown Pike and Infirmary Road. Slater's two-acre residential property sits directly on Germantown Pike, and the nursery property surrounds her property. Greenhouse buildings are located behind and to the north side of Slater's property. The two properties share a driveway off of Germantown Pike. Other than the nursery property's border with Slater's property, wooded areas surround the nursery grounds, and there is an unpaved footpath from Infirmary Road to the rear of the greenhouse buildings.

{¶ 33} Donald Wang testified that he purchased the property in 2004, but he had not operated it as a commercial nursery business. The greenhouse property was in disrepair, with vines and foliage growing around and inside several of the connected buildings. One structure was missing part of its roof. Wang, who lives in California, testified that he secured the "openings" (not including the doors) to the building with plywood. Some windows were covered with plastic mesh. The front of the building along Slater's property line had several doors and garage doors. Slater testified that the two doors were closed and one overhead door was open "just a little crack." None of the entrances were easily accessible.

{¶ 34} Deputies were called to the scene at approximately 6:03 p.m. on July 7. When Deputy Jamar Williams and his partner attempted to locate the voices and noises reported by Slater, they were unable to access the greenhouse from the front, as the door was closed and locked from the inside. The deputies eventually accessed the building by peeling back some plexiglass panels that were attached to the building.

{¶ 35} Deputy Brian Krimmer approached from the rear of the greenhouse property. He parked on Infirmary Road and walked through a "very heavily wooded" area

with "a lot of underbrush."   Krimmer was unable to make entry to the buildings from the back, so he walked around the rear building, which he described as being in "very rough condition."   Krimmer occasionally encountered some missing windows, many of which had green mesh.   Deputy Krimmer eventually entered the structure by pushing aside some mesh covering and going through a window.

{¶ 36} Deputies located a parked red vehicle belonging to one of the individuals found in the greenhouse by a residence on Infirmary Road near the rear of the nursery property.   Slater testified that she had been home all day on July 7, and she did not see anyone come onto her property or the portion of the greenhouse property near her home.

{¶ 37} Upon reviewing the evidence at trial, the trial court could have reasonably concluded that Pacific entered the greenhouse building through stealth or force.   The State's evidence indicated that Pacific and the others drove to the greenhouse property in a red vehicle and parked on Infirmary Road, along the rear of the property.   The court could have reasonably found that Pacific traversed a heavily wooded area with significant underbrush to reach the rear of the greenhouse buildings.   The evidence further indicated that Pacific gained entry to the greenhouse from the rear or side of the building, an area not visible to Slater from her home.   Slater, who lived adjacent to the front of the greenhouse and shared a driveway with the property, was home during the day on July 7 and did not see anyone.   The evidence thus reasonably supported a conclusion that Pacific used stealth to reach and enter the greenhouse.

{¶ 38} The trial court also could have reasonably concluded that Pacific entered the greenhouse by force.   Wang testified that he had secured the openings to the greenhouse buildings with plywood and "ma[de] sure that the accesses were basically

covered over." The responding deputies observed that some window openings were covered with plastic mesh. The deputies testified that they had difficulty gaining entry into the building; Deputy Williams entered by removing plexiglass panels, and Deputy Krimmer pushed aside plastic mesh and climbed through a window opening. Although the evidence suggested that Pacific entered the building from the rear or side, Slater further testified that the doors on the front of the building had been closed when she walked along the border between her property and the nursery property. The trial court thus could have reasonably determined that Pacific had to use some degree of force to enter the greenhouse.

*B. Trespass*

**{¶ 39}** Pacific next claims that the State failed to establish that he trespassed on the greenhouse property. Specifically, Pacific asserts that a limited liability company was the actual owner of the property and that there was no evidence that Wang had authority to act on behalf of that company. He thus argues that the State failed to establish that he acted without privilege or permission when he entered the greenhouse.

**{¶ 40}** For purposes of Pacific's offense, trespass means "knowingly entering or remaining on the land or premises of another, without a privilege or permission to be there." *State v. Baker*, 2016-Ohio-315, 58 N.E.3d 498, ¶ 21 (2d Dist.), citing R.C. 2911.21.

**{¶ 41}** The State addressed the trespass element of breaking and entering through the testimony of Wang and Slater. Wang testified that he purchased the greenhouse property in 2004, and the property was listed for sale at the time of trial. Wang had not operated a commercial nursery on the property. Although Wang lived in California, he

had visited the greenhouse property several times and secured the openings to the building. Wang testified that he had a friendly relationship with Slater, the resident next door to the property, and she informally looked after the property. Wang did not know Pacific, and he did not give anyone permission to enter the greenhouse or to remove items from the building. Wang acknowledged that he was behind on the taxes for the greenhouse property, but he stated that he made several tax payments, including in 2014, 2015, and 2019.

{¶ 42} During her testimony, Slater identified Wang as the owner of the greenhouse property. When asked if she had met the owner of the greenhouse property, she responded that she had reached out to Wang after seeing several people taking items from the greenhouse property. Wang had told Slater that he would come to look at the property, and he advised her to call the police if she saw anyone else taking items from the greenhouse. Slater testified that she called the police several times and she contacted Wang when the police caught the people who were there.

{¶ 43} Construing the evidence in the light most favorable to the State, there was sufficient evidence that Wang was the owner of the property, that he had not granted permission to Pacific to enter the greenhouse and take things, and that Pacific was not otherwise privileged to enter and remain on the premises. In addition, the State's evidence regarding how Pacific entered the property was sufficient to establish that Pacific acted knowingly when he entered and remained at the greenhouse.

{¶ 44} At trial, Pacific offered two tax records for the nursery property (Def. Ex. C & D). Both documents identified the owner of 5335 Germantown Pike as Germantown Pike Investment Properties LLC. Pacific argues that Ohio law is "clear that there are

distinct statutory provisions detailing when an individual may be authorized to act on behalf of said legal corporate entity." *See* R.C. Chapter 1705 (limited liability companies). He asserts that the State failed to established "trespass" because "no testimony was provided concerning any factual detail to support any individual's lawful right to act on behalf of the entity."

**{¶ 45}** Wang was not asked about Germantown Pike Investment Properties LLC, and he did not testify as to his status with that company. However, Defense Exhibit C, a printout of "master information" for 5335 Germantown Pike from the Montgomery County Treasurer's website, indicated that tax-related mailings were to be sent to "Germantown Pike Investment Properties LLC c/o Donald Wang" at Wang's address in California. Moreover, Wang expressly testified that he owned the property located at 5335 Germantown Pike, that he visited the property many times, that he performed "clean-up" work at the property and secured it, that he communicated with Slater about unauthorized entries onto the premises, and that he paid taxes on the property. The trial court could have reasonably concluded that Wang was lawfully acting on behalf of the limited liability company in performing these actions and that he also had authority to grant or deny permission to be on the nursery property. The trial court's conclusion that Pacific trespassed when he entered the greenhouse was neither based on insufficient evidence nor against the manifest weight of the evidence.

*C. Unoccupied Structure*

**{¶ 46}** Pacific next argues that the State failed to establish that he trespassed into an "unoccupied structure."

**{¶ 47}** The phrase "unoccupied structure" is not defined in R.C. 2911.13 or

elsewhere in the Ohio Revised Code. *State v. Fazenbaker*, Ohio Slip Opinion No. 2020-Ohio-6731, __ N.E.3d __, ¶ 7. The Ohio Supreme Court has used the definition of "occupied structure" in R.C. 2909.01(C) to inform the inverse concept of "unoccupied structure." *Id.* R.C. 2909.01(C) defines "occupied structure" as

> any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
>
> (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
>
> (2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
>
> (3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
>
> (4) At the time, any person is present or likely to be present in it.

{¶ 48} The State's evidence established that the structure at issue was a former commercial greenhouse. The property was in disrepair, and there was no ongoing business being conducted at the location. Pacific presented substantial evidence that vines and other vegetation were growing in and around the greenhouse, that portions of the building were missing its roof, and that some windows were missing. However, the descriptions of the property provided by the State's witnesses and the photographs of the property show that the greenhouse remained a structure. The greenhouse does not meet any of the definitions of an occupied structure. The trial court thus reasonably concluded that the greenhouse constituted an "unoccupied structure" within the meaning

of R.C. 2911.13(A).

    *D.   Theft or Felony Offense*

**{¶ 49}** Finally, Pacific argues that the State failed to present evidence of the value of any property related to an alleged theft offense, and therefore the State failed to establish that he was present at the property with the purpose to commit a felony.

**{¶ 50}** Pacific was found guilty of committing breaking and entering in violation of R.C. 2911.13(A).   Unlike R.C. 2911.13(B), which requires a purpose "to commit a felony," a charge under R.C. 2911.13(A) requires a purpose to commit "any theft offense" as defined in R.C. 2913.01 or "any felony."   The State was not required to prove that Pacific committed a felony theft offense.

**{¶ 51}** In this case, the State's evidence supported a conclusion that Pacific entered the greenhouse to commit petty theft, in violation of R.C. 2913.02, one of the offenses listed in R.C. 2913.01.   Of import, R.C. 2913.02 provides: "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent[.]"   Slater and the deputies heard voices and mechanical noises prior to the deputies' entry into the greenhouse. When Deputy Williams located Pacific, Pacific was using a saw to cut something off of an air conditioning unit mounted to the ceiling.   (Deputy Krimmer thought it was a pump or a motor.)   From Pacific's conduct, the trial court could have reasonably concluded that Pacific trespassed "with purpose to commit therein any theft offense."

**{¶ 52}** The trial court did not err in denying Pacific's Crim.R. 29 motion, and Pacific's conviction was not against the manifest weight of the evidence.   Pacific's third

and fourth assignments of error are overruled.

## V. Discrepancy in Judgment Entry

{¶ 53} In his fifth assignment of error, Pacific raises that there is a discrepancy between the sentence orally imposed and the court's written judgment entry. Pacific asks that we modify the judgment entry to reflect that he was convicted of a fifth-degree felony and that his "alternate sentence" for violating community control is 12 months.

{¶ 54} It is well established that "a court speaks only through its journal entries, not through its oral pronouncements." *State v. Smith*, 2d Dist. Montgomery No. 26217, 2015-Ohio-700, ¶ 10. *See also, e.g., State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 39, citing *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 15. In addition, a trial court lacks authority to reconsider its own valid final judgment in a criminal case. *E.g., State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 20; *State ex rel. Dobson v. Handwork*, 159 Ohio St.3d 442, 2020-Ohio-1069, 151 N.E.3d 613, ¶ 16.

{¶ 55} However, a nunc pro tunc entry is an appropriate vehicle for the trial court to correct clerical or typographical errors in a judgment entry. *State v. Donley*, 2017-Ohio-562, 85 N.E.3d 324, ¶ 103 (2d Dist.), citing Crim.R. 36; *State v. Hibbler*, 2d Dist. Clark No. 2019-CA-19, 2019-Ohio-3689, ¶ 20. Accordingly, where a judgment entry does not accurately reflect the sentence imposed at a sentencing hearing, the judgment entry generally may be corrected by means of a nunc pro tunc entry.

{¶ 56} At the sentencing hearing, the court said that Pacific was found guilty of breaking and entering, a felony of the fourth degree. However, a violation of R.C. 2911.13 is a felony of the fifth degree. R.C. 2911.13(C). Consistent with R.C. 2911.13,

the judgment entry states that Pacific was convicted of breaking and entering, a felony of the fifth degree.   Because the judgment entry accurately reflects the degree of Pacific's offense, his request to modify the degree of the offense in the judgment entry is moot.

{¶ 57} With respect to the prison sentence that the court could impose should Pacific's community control be revoked, the trial court orally informed Pacific that he had an alternate sentence of 18 months in prison, which is the maximum prison sentence for a felony of the fourth degree.   *See* R.C. 2929.14(A)(4).   The judgment entry, however, states that the alternate sentence is 12 months, the maximum prison sentence for a felony of the fifth degree.   *See* R.C. 2929.14(A)(5).   Given that Pacific asks us to modify the alternate prison term to the term that is already stated in the judgment entry, this requested modification is also moot.

{¶ 58} Pacific's fifth assignment of error is overruled.

## VI. Conclusion

{¶ 59} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Jamie J. Rizzo
Carlo C. McGinnis
Hon. Richard Skelton