[Cite as *State v. Webb*, 2021-Ohio-1977.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28886 |
| | : | |
| v. | : | Trial Court Case No. 20-CRB-2205 |
| | : | |
| JASON WEBB | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of June, 2021.

. . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 and MATTHEW KORTJOHN, Atty. Reg. No. 0083743, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
 Attorneys for Plaintiff-Appellee

KEARA SCHREIBER, Atty. Reg. No. 0096864, 1563 East Dorothy Lane, Suite 204, Dayton, Ohio 45429
 Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

 **{¶ 1}** Defendant-Appellant Jason Webb was convicted after a bench trial in the

Dayton Municipal Court of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree. On appeal, Webb claims that his conviction was based on insufficient evidence and against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} The State's evidence at trial consisted of the testimony of the complainant, Dorothy Wilson, and two Dayton police officers, Joshua Gundaker and Richard Thimmes. The court also admitted photographs of Wilson's facial injuries. The State's evidence at trial established the following facts.

{¶ 3} Wilson met Webb sometime around 2017 or 2018 while both worked for a temporary employment service. The two became friends, and Webb came to Wilson's home a few times to visit. During the summer of 2019, Webb began renting a room in Wilson's home. Webb did not pay his bills and had trouble maintaining employment. On several occasions, Wilson asked Webb to leave, which he did, but she repeatedly allowed him to stay again at her home until he "[got] on his feet."

{¶ 4} During the summer of 2020, Webb was living at Wilson's home. It is unclear what their relationship was at this time, but Wilson described herself as Webb's "lady friend." Wilson was employed at a Penn Station restaurant, and Webb had repeatedly asked her about the men with whom she worked.

{¶ 5} Around 6:00 or 7:00 p.m. on Thursday, July 16, 2020, Webb telephoned the Penn Station restaurant where Wilson worked and spoke with Wilson and her co-workers. Wilson felt that Webb had "disrespected" her by doing so. Wilson's shift ended at 9:00 p.m., and she returned home. When she arrived, Webb stepped down from the front

porch and confronted Wilson, accusing her of cheating on him with her co-workers. The argument moved inside, and Wilson was able to get Webb to calm down.

{¶ 6} Later that night, Webb asked Wilson to come to bed with him. Wilson responded that she was not ready to go to bed. Webb became angry, and the two began arguing again about whether Wilson was cheating on Webb with a co-worker. Webb told Wilson, "I'll show you how [your co-worker] feel about you," and began to punch Wilson's face. Webb also struck her stomach and side and caused a bruise on her arm. When Webb backed up, Wilson ran out of the house and went to the neighbor's home for help. The neighbor did not call the police. After about five minutes, Wilson went to her mother's vacant home, which was nearby, and saw Webb leave her (Wilson's) home in his van. Wilson returned home, locked the door, and laid down. She testified that she was in shock.

{¶ 7} The next day, Wilson was experiencing pain, and she stated that she had a knot on her forehead and black eyes. She went to a previously-scheduled mid-afternoon eye doctor appointment and then to the hospital. Wilson testified that she spoke to the police while at the hospital. Upon leaving the hospital, she went to her sister's residence and stayed overnight.

{¶ 8} Around 5:00 a.m. on Saturday morning, Wilson returned home. Webb came by her house soon thereafter, asking to be let in and threatening her. At that point, Wilson called the police.

{¶ 9} Officers Gundaker and Thimmes were dispatched to Wilson's residence on a report that a man was outside a woman's home and trying to get inside. Officer Thimmes was familiar with Wilson and Webb, having responded to prior calls involving

them.   Thimmes testified that he believed Webb did not live there, because the previous time he had encountered Webb, Webb had moved out of Wilson's residence and taken his belongings with him.

{¶ 10} When the officers arrived, Webb walked out from the side of the house to the front, and Officer Thimmes went over to talk with him.   Officer Thimmes initially asked Webb what he was doing at the home.   Webb answered that Wilson had allowed him to move back in.   Thimmes asked Webb if he had a key, and Webb responded he did not. Webb told the officer that he was locked out and was trying to get back in.

{¶ 11} Officer Gundaker, who was observing the interaction between Officer Thimmes and Webb, testified that Webb appeared to be under the influence of alcohol. Gundaker stated that Webb was disheveled, had slurred speech, was very sweaty, and acted somewhat emotional.   Gundaker could smell an odor of an alcoholic beverage emanating from his person.   Thimmes also testified that Webb was intoxicated.

{¶ 12} While Officer Gundaker remained with Webb, Officer Thimmes approached the front door and spoke with Wilson through the closed door; Wilson did not want to open the door while Webb was outside.   Wilson told the officer about the events preceding her 911 call.   According to Thimmes, Wilson said that Webb had repeatedly called her place of work the previous day and was accusing her of sleeping with her co-workers.   When she came home, Webb met her outside, irate, but she was able to go inside and have dinner and relax.   Wilson further reported that when Webb asked her to go to bed to have sex with him, she did not want to, which enraged him.   Webb resumed making accusations about Wilson and her manager at work.   Webb told Wilson that the manager did not care about her and that he would show Wilson what the manager thought of her.

Webb then struck her in the face. Wilson told Officer Thimmes that she had gone to a neighbor's house for help and, after seeing Webb leave, had returned home and locked herself in. Wilson reported that she had gone to the hospital. Wilson told Thimmes that, after she returned home, Webb came back and tried to get inside, which prompted her call to the police.

{¶ 13} Officer Thimmes asked to see her hospital paperwork, and Wilson passed the paperwork to him. Officer Gundaker could not hear the conversation between Officer Thimmes and Wilson, but he saw Wilson attempt to pass him some paperwork through the mail slot. Webb, who was standing with Officer Gundaker, shouted that Wilson was lying and had fallen down the stairs.

{¶ 14} After speaking with Wilson, the officers arrested Webb for domestic violence (the charge was later filed as an assault) and placed him in the back seat of their cruiser. Thimmes returned to Wilson to complete a domestic violence packet and take photographs of her facial injuries. Officer Thimmes testified that he could see a raised area and bruising on her forehead.

{¶ 15} The officers then transported Webb to the Montgomery County Jail. During the drive, Webb accused Thimmes of "looking for a way to arrest him" and told the officer that he (Webb) was going to physically harm Thimmes if he saw the officer out on the street. Webb also made "off color marks [sic]" about the men with whom he believed Wilson was having sex. Officer Thimmes testified that he did not observe any injuries on Webb during their interaction.

{¶ 16} Officer Gundaker prepared the police report regarding the incident. The report indicated that the assault occurred on Friday, July 17, 2020 at 10:30 p.m., and that

Webb did not live at Wilson's residence. Officer Thimmes had provided Officer Gundaker the information regarding the alleged assault and Webb's residence. On July 19, 2020, Webb was charged by complaint with assault. Eleven days later, the matter proceeded to a bench trial.

{¶ 17} At trial, defense counsel questioned Wilson about inconsistencies between her testimony and the police reports. Wilson reiterated that the assault occurred on Thursday, not Friday as indicated in the police report. She also stated that, to the extent the report indicated that Webb no longer lived with Wilson, the report was wrong.

{¶ 18} Officer Thimmes, on cross-examination, testified that Wilson said that she had allowed Webb to move back in, and that he had not effectively communicated that information to Gundaker. Consistent with the report, Thimmes understood from his conversation with Wilson that the assault occurred on Friday, not Thursday.

{¶ 19} At the conclusion of the State's case-in-chief, Webb's counsel made a Crim.R. 29 motion for a judgment of acquittal. He emphasized the discrepancies between Wilson's testimony regarding the date of alleged assault (Thursday) and the date in the police report (Friday). The trial court overruled the motion.

{¶ 20} In his defense, Webb called Wilson for additional questioning. When asked if she told the officers that the incident occurred on July 16, Wilson responded that she did not tell the officer a specific date and, instead, had given the officer paperwork from the hospital. Wilson reiterated that she went to the hospital on the day following the assault. She emphasized, "We didn't talk about Thursday, Friday or Saturday." Wilson repeated that she called the police on Saturday.

{¶ 21} Defense counsel also questioned Wilson about her prior convictions.

Wilson did not recall having a conviction for tampering with evidence. She did, however, recall a prior conviction for having weapons while under disability in 2014. Wilson stated that she did not have a weapon when this incident occurred.

**{¶ 22}** After hearing the evidence, the trial court found Webb guilty of assault and ordered a presentence investigation. The court sentenced Webb to 180 days in jail, with 110 days suspended and credit for 24 days served (leaving 46 days to serve). The court also imposed one year of community control sanctions, a $25 fine, and court costs.

**{¶ 23}** Webb appeals from his conviction.

## II. Sufficiency and Manifest Weight of the Evidence

**{¶ 24}** In his sole assignment of error, Webb claims that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. He emphasizes that there "was much confusion as to whether the event occurred on Friday, July 17 or Thursday, July 16" and that the testimony of Wilson and the responding officers contradicted each other. Webb further raises that Officer Thimmes did not question Wilson about Webb's assertion that she fell down the stairs and that he (Webb) did not cause her injuries. Webb asserts that Wilson's testimony was not credible.

**{¶ 25}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio

St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 26} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 27} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 28} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins* at 386. However, where an appellate court determines that a conviction is not against the

manifest weight of the evidence, the conviction is necessarily based on legally sufficient evidence. *State v. McLoughlin*, 2d Dist. Champaign No. 2017-CA-22, 2018-Ohio-2426, ¶ 8; *State v. Million*, 2d Dist. Montgomery No. 24744, 2012-Ohio-1774, ¶ 23.

{¶ 29} The trial court found Webb guilty of assault, in violation of R.C. 2903.13(A). That statute provides: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." A person acts "knowingly" when he or she is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B); *State v. Hemming*, 2d Dist. Montgomery No. 28738, 2021-Ohio-971, ¶ 24.

{¶ 30} Construing the evidence in the light most favorable to the State, the State provided sufficient evidence to support Webb's conviction. Wilson testified that, after returning from work, she and Webb exchanged words about Webb's calling her place of employment and his belief that she was cheating on him with her co-workers. Although she was able to calm him down for a time, Wilson stated that Webb became angry when she did not want to go to bed with him. According to Wilson, Webb again brought up one of Wilson's co-workers and told her that he would show her how the co-worker felt. Webb then proceeded to punch her in the face, causing a knot on her forehead and black eyes. Wilson testified that Webb struck her side and stomach and bruised her arm. Officer Thimmes testified that he observed and took photographs of Wilson's facial injuries; three photographs were admitted at trial. Wilson's and Officer Thimmes's testimony, if believed, was sufficient to establish that Webb knowingly caused physical harm to Wilson.

{¶ 31} Moreover, upon review of the record as a whole, we cannot conclude that

Webb's conviction was against the manifest weight of the evidence. In reaching its verdict, the trial court, as the trier of fact, was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented. *See Hemming*, 2d Dist. Montgomery No. 28738, 2021-Ohio-971, at ¶ 37. It was the province of the trier of fact to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that Webb had committed assault. *See id.*

{¶ 32} At trial, Wilson described the arguments with Webb that preceded the assault, the assault itself, and what occurred between the assault and her early morning call to the police on Saturday, July 18. Officer Thimmes testified about his conversation with Wilson on Saturday morning, during which Wilson told him what had occurred with Webb. Wilson's report to Thimmes about the events preceding, during, and immediately after the assault was substantially consistent with her testimony at trial.

{¶ 33} Webb focuses on the discrepancy between the date of the offense as stated in the police report and the date provided by Wilson at trial. Wilson initially testified that the assault occurred on July 17, but she later clarified that it must have occurred on July 16, a Thursday, because she had a doctor's appointment the following day. Wilson repeatedly testified that the assault occurred on Thursday night, that she went to her doctor and then the hospital on Friday, and that she called the police on Saturday morning.

{¶ 34} Officer Thimmes testified that he had the impression from Wilson that the assault occurred on Friday. Officer Thimmes and Wilson both testified that Wilson had shown the officer paperwork from the hospital, which, according to Wilson, would have

shown that Wilson sought treatment on Friday. Wilson emphasized upon additional questioning by defense counsel that she did not tell the officer a specific date for when the assault occurred and that she and Officer Thimmes "didn't talk about Thursday, Friday or Saturday." Based on the evidence presented, the trial court could have reasonably concluded that the assault occurred on Thursday night and that Officer Thimmes had misunderstood the timing of the assault.

{¶ 35} Webb also faults the officers for failing to investigate whether Wilson had fallen down the stairs, as Webb claimed at the scene. Webb asserts that Wilson had a prior conviction for tampering with evidence, which undermined her credibility. During cross-examination, Officer Thimmes agreed that he did not ask Wilson about falling down the stairs. Thimmes explained that Wilson "was very clear that was not how she got her injuries. That she had been struck in the forehead." Whether Wilson's testimony was credible in light of Webb's conflicting explanation for her injuries was a matter for the trial court to determine. Upon review of the evidence at trial, we cannot conclude that the trial court lost its way when it credited Wilson's version of events and found Webb guilty of assault.

{¶ 36} Webb's assignment of error is overruled.

### III. Conclusion

{¶ 37} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Stephanie L. Cook
Matthew Kortjohn
Andrew Sexton
Keara R. Schreiber
Hon. Christopher D. Roberts